IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>MATTHEW BALLARD, District Attorney for the Twelfth Prosecutorial District of Oklahoma, in his official capacity,<br><br>*Defendant*. | Case No. 4:24-cv-00626-CVE-SH |

**UNITED STATES' RESPONSE IN SUPPORT OF MOTION OF
THE CHEROKEE NATION, CHICKASAW NATION, AND CHOCTAW NATION
TO INTERVENE AS PLAINTIFFS**

**INTRODUCTION**

The United States of America filed its Complaint (ECF No. 1) and Motion for Preliminary Injunction (ECF No. 5) to prohibit Defendant Matthew Ballard, District Attorney for the Twelfth Prosecutorial District of Oklahoma ("Defendant"), from continuing to assert criminal jurisdiction over and prosecute Indians in Indian country in violation of federal law. Now the Cherokee Nation, Chickasaw Nation, and Choctaw Nation of Oklahoma ("Nations") move to intervene in this action. ECF Nos. 24, 24-1. The Nations' Motion to Intervene should be granted because they are entitled to mandatory intervention under Fed. R. Civ. P. 24(a)(2) or, at the very least, permissive intervention under Fed. R. Civ. P. 24(b)(1)(B).

**LEGAL STANDARD**

In the Tenth Circuit, a "nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing

1

parties." *Kane Cnty. v. United States*, 928 F.3d 877, 889 (10th Cir. 2019); *see also* Fed. R. Civ. P. 24(a)(2). Under Rule 24(b)(1)(B), the Court may permit "anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Permitting intervention under Rule 24(b)(1)(B) is "a matter within the sound discretion of the district court." *Arney v. Finney*, 967 F.2d 418, 421 (10th Cir. 1992).

## ARGUMENT

The United States believes the Nations have demonstrated both significant interests that may be impaired in this action, as required for intervention as of right, and claims sharing common questions of law and fact with the main action, making permissive intervention appropriate. ECF No. 24-1 at 12-13, 17-18. The Cherokee Nation has an interest in protecting its own tribal sovereignty and inherent authority to prosecute Indians for conduct occurring on its Reservation, which is being irreparably harmed by Defendant's actions. *Id.* at 7-9, 17; *see* ECF No. 5 at 22-25. And as prosecuting sovereigns in Indian country, each of the Nations has an interest in "the scope of tribal sovereignty and the allocation of criminal jurisdiction in Indian country"—as well as a claim against Defendant to protect their own tribal members from being unlawfully prosecuted by the State for conduct occurring in Indian country. ECF No. 24-1 at 12-13, 17. Any determination allowing the challenged prosecutions to continue would impair the Nations' interests in maintaining exclusive federal and tribal criminal jurisdiction on their respective Reservations, and in protecting their members from prosecution by the State. *Id.* at 13; *see* ECF No. 5 at 20-25.

The United States brought this action in part to protect the inherent sovereign power of tribes to exercise criminal jurisdiction over Indians in Indian country, but the United States cannot adequately represent all the Nations' interests here. As the Nations put it, each Nation has

"a specialized interest," not shared by the United States, "in the scope of state jurisdiction within its Reservation arising from its 'specific interest' in its 'political sovereignty.'" ECF No. 24-1 at 14 (quoting *Cavazos v. De La Vega*, No. 20-2942 (CKK), 2021 WL 6753586, at *4 (D.D.C. Apr. 1, 2021); citing *White v. Univ. of Cal.*, 765 F.3d 1010, 1024 (9th Cir. 2014) ("the sovereignty of the United States and the Indian tribes are not 'coextensive'")). The Nations' authority to prosecute Indians is similar to the United States' prosecutorial authority in Indian country but distinct in scope and source, as the Nations retain their inherent powers of self-government, including the power to exercise criminal jurisdiction over Indians, that have not been withdrawn by Congress. *See* ECF No. 5 at 7-8, 16-17 & n.3.

The United States also has many interests in this action that are not shared by the Nations, including protecting Congress's plenary and exclusive authority over Indian affairs—authority that Congress exercised by crafting a comprehensive statutory system governing state assumption of such jurisdiction. *See* ECF No. 5 at 16-20 (discussing Public Law 280 and other statutes). The United States also has a unique interest in maintaining its own, independent prosecutorial authority, granted by Congress, to address certain crimes committed by Indians in Indian country without interference by the states. And the United States' interests transcend any single Indian reservation or tribe; they concern the allocation of criminal jurisdiction throughout Indian country nationwide. Beyond these interests, the United States represents the interests of the public at large, as well as internal interests such as the efficient administration of its own litigation. *See, e.g.*, *Kane Cnty.*, 928 F.3d at 894-95. The United States' interests are therefore separate and distinct from, and may not always align with, the Nations' interests, making intervention by the Nations appropriate. Moreover, because the United States' and Nations' respective interests in this litigation are not identical, their arguments may differ in scope based

on the Nations' particularized interests in their inherent authority over their land bases and citizens. In this way, having both the United States' and the Nations' arguments before the Court will help the Court determine the law and rule on the jurisdictional issue presented.

Relatedly, the United States also agrees that the Nations should be allowed to intervene because they have "unique knowledge about the issue[s]" to be litigated. ECF No. 24-1 at 14, 16-17 (citing *Nat'l Farm Lines v. Interstate Com. Comm'n*, 564 F.2d 381, 383-84 (10th Cir. 1977) and collecting cases). We agree that the Nations' knowledge and expertise may be particularly relevant if the court is called on to decide whether, after *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), the balancing test articulated in *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980), should be used to determine whether states have criminal jurisdiction over Indians in Indian country. Although the United States and Nations agree that *Bracker* balancing in not appropriate in determining criminal jurisdiction over Indians in Indian country, *see* ECF No. 5 at 8-13, if the *Bracker* analysis is applied, the Nations are uniquely and best situated to articulate their own interests in exercising exclusive criminal jurisdiction over Indians in Indian country. Even if the Court rejects (as it should) Defendant's argument that the *Bracker* balancing test should be applied, the Nations' expertise will assist the Court in deciding the case.

Nor would intervention by the Nations "unduly delay or prejudice the adjudication of the original parties' rights"—a factor that must be considered for permissive intervention. Fed. R. Civ. P. 24(b)(3); *see* ECF No. 24-1 at 10, 18. The Nations do not seek to add new issues, and their intervention would not complicate the issues already raised. To the contrary, the Nations' participation will assist the Court in deciding what is already before it.[1] And given the Nations'

---

[1] If the Nations are granted intervention, this case will be the first after *Castro-Huerta* where all three prosecuting sovereigns within the State of Oklahoma—federal, state, and tribal—are parties to a case involving the question of state criminal jurisdiction over Indians in Indian

timely intervention (ECF No. 24-1 at 10-11), Defendant will not be prejudiced because he will have a full and fair opportunity to respond to the Nation's arguments.

Lastly, in similar circumstances where the United States has brought an affirmative case on behalf of an Indian tribe, the tribe has typically been allowed to intervene. *See, e.g.*, *Arizona v. California*, 460 U.S. 605, 613-15 (1983) (finding it "obvious that the Indian Tribes, at a minimum, satisfy the standard for permissive intervention set forth in the Federal Rules" where "[t]he Tribes' interests . . . have been and will continue to be determined in this litigation" and "[t]he States have failed to present any persuasive reason why their interests would be prejudiced or this litigation unduly delayed by the Tribes' presence"); *Idaho v. United States*, 533 U.S. 262, 271-72 (2001) (tribe allowed to intervene in quiet title action brought by United States on tribe's behalf). Although the United States generally opposes intervention where an Indian tribe seeks to dismiss an Administrative Procedure Act action *against* the United States for failure to join a necessary party under Fed. R. Civ. P. 19, *see, e.g.*, *Kansas v. United States*, 249 F.3d 1213, 1226-27 (10th Cir. 2001), those are not the circumstances here. Here, as described above and in the Motion to Intervene, the Nations have a specialized interest in and unique knowledge about the issues in the case, as well as their own claims against Defendant, and their participation would assist the Court—making clear that intervention is appropriate.[2]

---

country. This case cannot be compared to the criminal cases brought by Defendant against Indians in state court, where neither the United States nor the relevant tribes are parties or receive any notice that their exclusive prosecutorial jurisdiction is at issue. Allowing the Nations to intervene would streamline the adjudication of the jurisdictional question presented here with all three sovereigns as parties.

[2] The United States notes that, for these same reasons and others, it supports consolidating this case with the Muscogee (Creek) Nation's recently filed case against Defendant, which is also pending before this Court. *See* ECF No. 5, *Muscogee (Creek) Nation v. Ballard*, No. 4:25-cv-50-CVE-JFJ (N.D. Okla.).

5

DATED: February 21, 2025    Respectfully submitted,


               LISA LYNNE RUSSELL
               Deputy Assistant Attorney General


               */s/ Cody McBride*
               CODY MCBRIDE
               HILLARY HOFFMAN
               United States Department of Justice
               Environment & Natural Resources Division
               Tribal Resources Section
               P.O. Box 7611, Ben Franklin Station
               Washington, D.C. 20044
               Tel.: (202) 514-6755 (McBride)
               Tel.: (202) 598-3147 (Hoffman)
               Fax: (202) 353-1156
               cody.mcbride@usdoj.gov
               hillary.hoffman@usdoj.gov


OF COUNSEL:
CONOR CLEARY, Field Solicitor, Tulsa Field Solicitor's Office
United States Department of the Interior
Office of the Solicitor


               *Attorneys for United States of America*

**CERTIFICATE OF SERVICE**

I certify that on February 21, 2025, I electronically filed this document with the Clerk of the Court by using the CM/ECF system, which will serve and send a notice of electronic filing to all parties or their counsel of record.


DATED: February 21, 2025                     /s/ Cody McBride
                                             CODY MCBRIDE