IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 24-CV-626-CVE-SH |
| | ) | |
| | ) | |
| MATTHEW J. BALLARD, District | ) | |
| Attorney for The Twelfth Prosecutorial | ) | |
| District of Oklahoma, in his official | ) | |
| capacity, | ) | |
| | ) | |
| *Defendant*. | ) | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
<u>AND BRIEF IN SUPPORT</u>**

# TABLE OF CONTENTS

I.    BACKGROUND ................................................................................................ 1

II.   STANDING.................................................................................................... 6

   A.   Plaintiff has not suffered an injury-in-fact. ................................................. 6

   B.   A favorable ruling would not redress any purported injury. .................................. 9

   C.   Plaintiff's ability to bring a civil claim as the trustee of Tribes does not extend
        this far. ................................................................................................ 10

III.  *YOUNGER* ABSTENTION ................................................................................ 11

   A.   There are ongoing state criminal proceedings. ................................................... 13

   B.   The State court provides an adequate forum to hear the claims raised in the
        Complaint. ............................................................................................... 13

   C.   The state proceedings involve important state interests. ......................................... 16

   D.   No exceptions to the bar on federal injunctions of state criminal proceedings
        apply. .................................................................................................... 17

   E.   Plaintiff's generalized request to enjoin potential future criminal proceedings is
        governed by the same Younger abstention considerations. ....................................... 19

IV.   COLORADO RIVER ABSTENTION ................................................................... 20

CONCLUSION ...................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006) ........................................................................................... 8
*Carney v. Adams*,
  592 U.S. 53 (2020) ............................................................................................. 7
*City of Tulsa v. O'Brien*,
  2024 OK CR 31, 2024 WL 5001684 ......................................................... passim
*Colorado River Water Conservation Dist. v. U.S.*,
  424 U.S. 800 (1976) ................................................................... 6, 21, 22, 23
*D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*,
  705 F.3d 1223 (10th Cir. 2013) .......................................................................... 21
*D.L. v. Unified Sch. Dist. No. 497*,
  392 F.3d 1223 (10th Cir. 2004) .......................................................................... 14
*Denezpi v. United States*,
  596 U.S. 591 (2022) ............................................................................................. 8
*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) ........................................................................................... 20
*Ellis v. Morzelewski*,
  2:21-CV-639-TC, 2022 WL 3645850 (D. Utah Aug. 24, 2022) ........................... 20
*Fisher v. Whetsel*,
  142 Fed.Appx. 337 (10th Cir. 2005) .................................................................. 17
*Fox v. Maulding*,
  16 F.3d 1079 (10th Cir. 1994) ...................................................................... 21, 22
*Herrera v. City of Palmdale*,
  918 F.3d 1037 (9th Cir. 2019) ........................................................................... 20
*Hicks v. Miranda*,
  422 U.S. 332 (1975) ........................................................................................... 20
*Inverarity v. Zumwalt*,
  1953 OK CR 148, 262 P.2d 725 ......................................................................... 10
*J.B. ex rel. Hart v. Valdez*,
  186 F.3d 1280 (10th Cir. 1999) .......................................................................... 13
*Joseph A. ex rel. Corrine Wolfe v. Ingram*,
  275 F.3d 1253 (10th Cir. 2002) .......................................................................... 13
*Kansas v. Garcia*,
  589 U.S. 191 (2020) ........................................................................................... 17
*Kelly v. Robinson*,
  479 U.S. 36 (1986) ............................................................................................. 17

*McClanahan v. State Tax Comm'n of Arizona,*
    411 U.S. 164 (1973) ..................................................................................................... 3
*McGirt v. Oklahoma,*
    591 U.S. 894 (2020) .......................................................................................... 2, 4, 5, 7
*Miller v. Fluent Home, LLC,*
    220CV00641HCNJCB, 2021 WL 8086367 (D. Utah Mar. 18, 2021) .......................... 6
*Mitchum v. Foster,*
    407 U.S. 225 (1972) ............................................................................................... 1, 18
*Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation,*
    425 U.S. 463 (1976) ................................................................................................... 10
*Moore v. Sims,*
    442 U.S. 415 (1979) ................................................................................................... 14
*N. Mill St., LLC v. City of Aspen,*
    6 F.4th 1216 (10th Cir. 2021) ...................................................................................... 6
*New Beckley Mining Corp. v. International Union*, UMWA,
    946 F.2d 1072 (4th Cir. 1991) ................................................................................... 21
*Nova Health Sys. v. Gandy,*
    416 F.3d 1149 (10th Cir. 2005) .................................................................................. 9
*Oglala Sioux Tribe v. Schwarting,*
    894 F. Supp. 2d 1195 (D. Neb. 2012) ....................................................................... 10
*Oklahoma v. Castro-Huerta,*
    597 U.S. 629 (2022) ............................................................................................. passim
*Organized Village of Kake v. Egan,*
    369 U.S. 60 (1962) ...................................................................................................... 3
*Pennzoil Co. v. Texaco, Inc.,*
    481 U.S. 1 (1987) ....................................................................................................... 14
*Petrella v. Brownback,*
    697 F.3d 1285 (10th Cir. 2012) .................................................................................. 6
*Phelps v. Hamilton,*
    122 F.3d 885 (10th Cir. 1997) ................................................................................... 19
*Sprint Commc'ns, Inc. v. Jacobs,*
    571 U.S. 69 (2013) ................................................................................................. 1, 12
*State v. Ashley,*
    CF-2024-421 (Dist. Ct. Rogers Co.) ........................................................................... 5
*State v. Bull,*
    CF-2023-226 (Dist. Ct. Rogers Cnty.) .................................................................. 4, 19
*State v. Crosson,*
    2023 OK CR 18, 540 P.3d 16 ...................................................................................... 4
*State v. Davis,*
    1913 OK CR 80, 130 P. 962 ....................................................................................... 10

*State v. Williams,*
    CF-2023-311 (Dist. Ct. Rogers Co.) ................................................................ passim

*Summers v. Earth Island Institute,* 555 U.S. 488 (2009) ............................................. 6

*U.S. v. Lara,*
    541 U.S. 193 (2004) ........................................................................................11

*United States v. Lanza,*
    260 U.S. 377 (1922) ......................................................................................... 8

*United States v. Minnesota,*
    270 U.S. 181 (1926) ....................................................................................... 10

*Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah,*
    240 F.3d 871 (10th Cir. 2001) .................................................................... 14, 19

*White Mountain Apache Tribe v. Bracker,*
    448 U.S. 136 (1980) ......................................................................................... 3

*Winn v. Cook,*
    945 F.3d 1253 (10th Cir. 2019) ............................................... 12, 14, 15, 17

*Younger v. Harris,*
    401 U.S. 37 (1971) ..................................................................................... passim

## Statutes

20 O.S. § 40 ......................................................................................................... 9

21 O.S. § 1021 ..................................................................................................... 4

21 O.S. § 1021.2 .................................................................................................. 4

21 O.S. § 1024.2 .................................................................................................. 4

21 O.S. § 843.5(C) ............................................................................................... 5

22 O.S. § 1051(A) ................................................................................................ 5

28 U.S.C.A. § 2283 .............................................................................................11

63 O.S. § 2-402 .................................................................................................... 5

63 O.S. § 2-405(B) ............................................................................................... 5

63 O.S. § 2-415(C) ............................................................................................... 4

74 O.S. § 18b(A)(1) ............................................................................................. 9

74 O.S. § 18(A)(3) ............................................................................................... 9

74 O.S. § 6 ...................................................................................................... 4, 9

Okla. Const. art. 7, § 7(a) ................................................................................... 9

## Other Authorities

1906 Oklahoma Enabling Act ............................................................................. 3

Okla. Const. art. 6, § 8 ........................................................................................ 9

Public Law 280 .................................................................................................... 3

U.S. Const. art. III .............................................................................................. 6

There has long existed in our judicial system a "national policy forbidding federal courts to stay or enjoin pending state court proceedings[.]" *Mitchum v. Foster*, 407 U.S. 225, 230 (1972). Grounded in notions of federalism and comity, this policy demands that "[w]hen there is a parallel, pending state criminal proceeding, federal courts *must* refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (emphasis added). Such is the case here. Yet the United States, which lacks standing in the first place, urges this Court to disregard, or perhaps reverse, this long-standing, established policy and enjoin ongoing state criminal proceedings (and prevent countless future ones) addressing the exact same issues raised by the United States. More alarmingly, this request represents a collateral attack that would require a federal district court to reverse a recent decision of the Oklahoma Court of Criminal Appeals.

The Complaint [Dkt. #2] should be dismissed for lack of standing, or alternatively, under the *Younger* abstention doctrine or *Colorado River* abstention doctrine.

## I.      BACKGROUND

Displeased with the opinion of the Oklahoma Court of Criminal Appeals ("OCCA") in *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684, issued just weeks before this lawsuit was filed, as well as rulings by various State court judges in ongoing criminal proceedings, and the Supreme Court's opinion in *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), the United States ("Plaintiff") filed this improper lawsuit. Plaintiff seeks an injunction preventing Matthew J. Ballard, a state prosecutor ("Ballard"), from prosecuting *all* Indians accused of committing *any* crime in Indian country. However, the subject of Plaintiff's lawsuit is actually limited to nonmember Indians accused of non-major crimes in Indian country. And while Plaintiff sued a district attorney, the injunction it seeks would directly affect the State's judiciary, which is responsible for determining whether State courts have subject matter jurisdiction. This includes

the OCCA, which recently addressed the jurisdictional issue, and State district court judges who are currently applying the law as handed down by the OCCA and the U.S. Supreme Court.

Below is a summary of the OCCA's opinion, which addressed each of Plaintiff's arguments, followed by relevant context regarding the ongoing criminal proceedings at issue. The introduction will then close with a reminder that neither *McGirt* nor *Castro-Huerta* support the novel path Plaintiff pursues here—a federal lawsuit.

### The Oklahoma Court of Criminal Appeals decision in O'Brien v. City of Tulsa

On December 5, 2024, the OCCA issued a detailed Opinion addressing the central issue in this lawsuit—whether the State has subject matter jurisdiction over nonmember Indians who commit non-major crimes in Indian country within Oklahoma. *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684. The OCCA's Opinion provided jurisdictional clarity following the United States Supreme Court's opinions in *McGirt v. Oklahoma*, 591 U.S. 894 (2020) and *Castro-Huerta*, 597 U.S. at 629. These decisions addressed, in part, the State's jurisdiction to prosecute major crimes committed by Indians in Indian country and the State's jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country, respectively.

The *O'Brien* case involved the prosecution of traffic violations committed by a nonmember Indian in Indian country. In *O'Brien*, the OCCA took the United States Supreme Court at its word, concluding that "[u]nless preempted by federal law, 'as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country.'" *Id*. ¶ 14 (quoting *Castro-Huerta*, 597 U.S. at 652-53 (2022) (citing *Organized Village of Kake v. Egan*, 369 U.S. 60, 72 (1962)). Applying the framework established in *Castro-Huerta* to crimes committed by Indians in Indian country, the OCCA stated:

> Under the Supreme Court's precedent, "a State's jurisdiction in Indian country may be preempted (i) by federal law under ordinary principles of federal preemption, or

(ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government."

*Id*. ¶ 17 (quoting *Castro-Huerta*, 597 U.S. at 638).

The OCCA explicitly rejected each of the contentions Plaintiff raises in the Complaint. The Court held that: 1) the Supreme Court's framework in *Castro-Huerta* applies to a state's criminal jurisdiction over Indians, *Id*. ¶¶ 13-17; 2) neither Public Law 280 nor the 1906 Oklahoma Enabling Act preempts state jurisdiction over general crimes committed by Indians, *Id*. ¶ 20; 3) application of *McClanahan* does not override *Bracker* balancing or any other component of the *Castro-Huerta* framework, *Id*. ¶¶ 27-35; and 4) as here, the framework urged by O'Brien "disregard[ed] the plain holding of *Castro-Huerta* and instead rel[ies] largely on Justice Gorsuch's dissent and a string of citations to U.S. Supreme Court precedent that ultimately undermine its own argument." *Id*. ¶ 5 (Musseman, J., concurring).[1] Accordingly, the OCCA found that the State has jurisdiction to prosecute these non-major crimes committed in Indian country. On February 5, 2025, the OCCA issued an order denying O'Brien's Petition for Rehearing. The case is now ripe for appeal to the United States Supreme Court.

*The ongoing criminal proceedings Plaintiff seeks to have enjoined*

As support for its Complaint, Plaintiff references three ongoing criminal prosecutions that Defendant filed in Rogers County District Court for conduct that occurred in the historical bounds of the Cherokee Nation (the "Ongoing Prosecutions"). Compl. 35.a-c. In addition to the fact that

---

[1] The OCCA references *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164 (1973) (holding that the Arizona state individual income tax was unlawful as applied to reservation Navajo Indians with respect to income derived wholly from reservation sources) and *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145 (1980) ("This inquiry is not dependent on mechanical or absolute conceptions of state or tribal sovereignty, but has called for a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.").

each was pending at the time Plaintiff filed its Complaint, each has at least one common theme—allegations of non-major crimes committed by nonmember Indian defendants (*i.e.*, a member of a tribe charged with committing a crime within the boundaries of another tribe's Indian country). Relevant details of the Ongoing Prosecutions follow.

In *State v. Bull*, CF-2023-226 (Dist. Ct. Rogers Cnty.), Ballard filed criminal charges against Brayden Bull, a Navajo Nation member. The district court initially refused to issue a warrant after receiving a probable cause affidavit, but the OCCA issued a writ of mandamus instructing the lower court to do so. *State v. Crosson*, 2023 OK CR 18, 540 P.3d 16. Bull is accused of manufacturing child porn in violation of 21 O.S. § 1021.2, distribution of child porn in violation of 21 O.S. § 1021, and possession of child porn in violation of 21 O.S. § 1024.2. Ballard is joined by special prosecutor Greg Mashburn, whom Governor Stitt appointed pursuant to his authority under 74 O.S. § 6. Not even Bull has filed a challenge to the State's jurisdiction. Yet Plaintiff seeks to do so in this lawsuit.

In *State v. Williams*, CF-2023-311 (Dist. Ct. Rogers Co.), Ballard filed criminal charges against Tony Demond Williams, a member of the Chickasaw Nation. Williams is accused of aggravating trafficking in illegal drugs (fentanyl) in violation of 63 O.S. § 2-415(C). Williams has challenged State jurisdiction based on *McGirt*. Within two months prior to the commencement of this action, the Cherokee Nation, Chickasaw Nation, and the U.S. Department of Justice's Environment and Natural Resources Division filed amicus submissions in *Williams*, advancing the arguments raised here. The issue of whether the State court has jurisdiction has been extensively briefed and is pending a decision from Rogers County District Judge Stephen Pazzo. Judge Pazzo's decision will be appealable to the OCCA, and any ruling there may be appealable to the United States Supreme Court. *See* 22 O.S. § 1051(A); Sup. Ct. R. 11.

In *State v. Ashley*, CF-2024-421 (Dist. Ct. Rogers Co.), Ballard filed criminal charges against Eric Ashley, a member of the Choctaw Nation. Ashley was accused of child neglect in violation of 21 O.S. § 843.5(C),[2] and remains accused of possession of controlled dangerous substance in violation of 63 O.S. § 2-402 and possession of drug paraphernalia in violation of 63 O.S. § 2-405(B). The case is currently pending. Ashley recently challenged the State court's jurisdiction. *Ashley*, Supp. Mot. to Dismiss for Lack of Jurisdiction, CF-2024-421 (Dist. Ct. Rogers Co. Feb. 21, 2025). If Plaintiff wishes to share in the challenge, it may file the same or similar brief that Plaintiff submitted in *Williams*.

Unless disrupted by an improper federal injunction, each of these cases can trend on the same course as *McGirt* and *Castro-Huerta* did.

*McGirt* and *Castro-Huerta*

Although Plaintiff's Complaint repeatedly references *McGirt* and *Castro-Huerta*, it fails to acknowledge that both cases arose from State court proceedings. Like the criminal cases cited in Plaintiff's Complaint, McGirt and Castro-Huerta were prosecuted by an Oklahoma district attorney in a county courthouse, with appeals made to the OCCA—the same State appellate court where Bull, Williams, and Ashley can seek resolution of any jurisdictional issues or other grievances they may wish to raise. From there, the United States Supreme Court is available, just as it was in *McGirt* and *Castro-Huerta*. Neither of those cases resulted from federal lawsuits, declaratory judgments, or injunctions.

---

[2] On February 27, 2025, Ballard amended the charges against Ashley. The State charge of child neglect has been dismissed because it is arguable that the State crime, even though not defined by the Major Crimes Act, is a major crime. All remaining charges in the Ongoing Prosecutions are non-major crimes. Notably, dismissal would be necessary under the standing and abstention analyses herein, regardless of whether the crimes at issue were only non-major crimes.

Despite this established pattern, Plaintiff now refuses to recognize its applicability to the Ongoing Prosecutions. This is especially puzzling given that Plaintiff, through the same DOJ division and attorneys who filed this lawsuit, has submitted a jurisdictional brief in one of the Ongoing Prosecutions. *See State v. Williams*, United States' Submission as Amicus Curiae, CF-2023-311 (Dist. Ct. Rogers Cnty. Nov. 8, 2024).

As will be demonstrated, Plaintiff lacks standing to proceed. Even if it did have standing, this case still must be dismissed under the *Younger* abstention doctrine derived from *Younger v. Harris*, 401 U.S. 37 (1971), or, alternatively, pursuant to *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976).

## II.    STANDING

Injury-in-fact, causation, and redressability comprise the three requirements of U.S. Const. art. III standing and ensure litigation parties have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends for illumination." *Miller v. Fluent Home, LLC*, 220CV00641HCNJCB, 2021 WL 8086367, at *3 (D. Utah Mar. 18, 2021) (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007)) Plaintiff must demonstrate the requirements are met before the merits of a case may be reached. *Id*. At the least, Plaintiff cannot establish either an injury-in-fact or redressability.

### A.  Plaintiff has not suffered an injury-in-fact.

An injury alleged must be "concrete and particularized," and the threat of that injury must be "actual and imminent, not conjectural or hypothetical." *Petrella v. Brownback*, 697 F.3d 1285, 1293 (10th Cir. 2012) (quoting *Summers v. Earth Island Institute,* 555 U.S. 488, 493 (2009). To be concrete, an injury must be real harm to a legally protected interest, not abstract. *N. Mill St., LLC*

*v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021). An injury is particularized only if it affects a party in a personal and individual way. *Id*. And a party who is not threatened by – and, indeed, could never be subject to – state criminal prosecution lacks standing and is not an appropriate plaintiff to challenge any such pending prosecutions.

> A federal lawsuit to stop a prosecution in a state court is a serious matter. And persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases.

*Younger*, 401 U.S. at 42. Plaintiff has not suffered an injury that is concrete, particularized, or actual or imminent.

To the extent Plaintiff claims an injury, its allegations are abstract. Toward the end of its Complaint, Plaintiff makes generalized statements that may be intended to describe harm. Plaintiff asserts that Defendant's prosecutions have "created jurisdictional chaos" and are "intolerable and dangerous if permitted to stand[.]" Compl. ¶ 40. Plaintiff follows that with an unspecified, vague assertion that "Defendant's actions will continue to seriously impact the United States' ability to protect tribal sovereignty and its own prosecutorial jurisdiction both in Oklahoma and nationwide." *Id*.[3]

*First*, the prosecutions are against individual criminal defendants, not the United States. Only the individuals can claim specific injury. Like Jimcy McGirt and Victor Manuel Castro-Huerta, the individual defendants subject to the Ongoing Prosecutions have sought relief through proper channels—district court filings and appeals to the OCCA. The United State Supreme Court

---

[3] To be sure, the "actions" at issue are limited to Ballard's prosecutions of the nonmember Indians in the Ongoing Prosecutions. "Actions" do not include any broader group of individuals, such as member Indians charged with criminal conduct within the boundaries of their Tribe's Indian country. So, a request for relief associated with prosecutions other than those against nonmember Indians would necessarily require this Court to engage a hypothetical. *Carney v. Adams*, 592 U.S. 53, 58 (2020) (emphasizing an injury-in-fact "cannot be conjectural or hypothetical")

is available to them all the same. As in *McGirt* and *Castro-Huerta*, Plaintiff may participate as amicus curiae, as may others whose injuries are abstract.

There is a reason that the seminal, jurisdictional cases most heavily relied upon by Plaintiff have not involved the United States as parties but are instead styled *Oklahoma v. Castro-Huerta* and *Oklahoma v. McGirt*. The State prosecutes individuals. And its courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

*Second*, the Ongoing Prosecutions—the likes of which have existed for over a century— do not impact Plaintiff's authority to prosecute. The United States Supreme Court recently reaffirmed that an individual may be prosecuted by separate sovereigns for the same conduct. *Denezpi v. United States*, 596 U.S. 591 (2022); *see also United States v. Lanza*, 260 U.S. 377, 382 (1922) ("Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other."). Indeed, after Defendant filed charges against Brayden Bull, the United States filed a criminal complaint against Bull for the same conduct, highlighting that Plaintiff has not suffered an injury. Compl. ¶ 35.a.

*Third*, the relief Plaintiff seeks—enjoining the actions of a single state prosecutor—only threatens greater "jurisdictional chaos." Compl. ¶ 40. A hodgepodge, patchwork system where certain state court prosecutors are permitted to prosecute nonmember Indians under applicable State and Supreme Court law, while others are expressly barred by federal district court judges from doing so, is the epitome of jurisdictional chaos.

Therefore, Plaintiff is unable to meet the initial requirement for standing. Even if this requirement were met, Plaintiff cannot demonstrate redressability.

B. *A favorable ruling would not redress any purported injury.*

To establish redressability, one "must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005). Said differently, redressability is absent when, as here, the Court's decision would have no meaningful effect on a complainant's alleged injury.

Had Plaintiff claimed that Defendant's prosecutions caused injury, redress would not be available through this lawsuit. The most extreme—albeit inappropriate—relief would be to enjoin Ballard from prosecuting certain crimes against a limited class of individuals. Even then, redress could not be achieved, and the Ongoing Prosecutions could continue for at least three reasons.

*First*, the Governor has a constitutional duty to "cause the laws of the State to be faithfully executed[.]" Okla. Const. art. 6, § 8. A corresponding statute authorizes the Governor "to employ counsel to protect the rights or interests of the state in any action or proceeding, civil or criminal, which has been, or is about to be commenced, and the counsel so employed by him may, under the direction of the Governor, . . . may prosecute offenses against the law of the state[.]" 74 O.S. § 6.

*Second*, the Oklahoma Attorney General ("OAG") can initiate or appear in criminal prosecutions on behalf of the state. 74 O.S. § 18(A)(3). The OAG may also "appear for the state and prosecute and defend all" criminal proceedings in the Court of Criminal Appeals in which the state is interested as a party. 74 O.S. § 18b(A)(1). Given the Governor's and OAG's authority, an injunction would not hinder the State's ability to continue the prosecutions at issue.

*Third*, the requested injunction could not affect the trial courts' or OCCA's ability to proceed with adjudications. Oklahoma "District Court[s] shall have unlimited original jurisdiction of all justiciable matters[.]" Okla. Const. art. 7, § 7(a). And the OCCA "shall have exclusive appellate jurisdiction . . . in all criminal cases appealed from the district . . . courts[.]" 20 O.S. § 40.

OCCA "is supreme in all criminal appeals from state courts of this State[.]" *Inverarity v. Zumwalt*, 1953 OK CR 148, ¶ 18, 262 P.2d 725, 730. The OCCA is duty bound to ensure Oklahoma has "a uniform system of criminal jurisprudence[.]" *State v. Davis*, 1913 OK CR 80, ¶ 8, 130 P. 962, 964.

In sum, a favorable decision for Plaintiff against a single district attorney would not redress any purported injury. Therefore, the Complaint must be dismissed for lack of standing, whether on Plaintiff's own behalf or as the trustee of tribes.

C. *Plaintiff's ability to bring a civil claim as the trustee of Tribes does not extend this far.*

Any isolated analysis to determine whether Plaintiff has standing to sue as trustee of tribes would fail as well. "[T]he question of whether the United States has standing . . . to sue on behalf of others is analytically distinct from the question of whether the substantive theory on which it relies will prevail, and each is in turn separate from whether injunctive relief can issue at the United States' behest[.]" *Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 475 (1976)*.* Importantly, "the United States' standing to bring a civil claim as a trustee on behalf of Indian tribes is not absolute, nor is it grounded in a general eleemosynary or *parens patriae* interest in the well-being of Indians. Rather, it is grounded in the United States' authority to vindicate *its own interest* in preserving the protections it has established for Indian property rights." *Oglala Sioux Tribe v. Schwarting*, 894 F. Supp. 2d 1195, 1203–04 (D. Neb. 2012) (emphasis added). The United States' standing to sue as trustee on behalf of Indian tribes is based on "its guardianship over the Indians" and "its right to invoke the aid of a court of equity in removing unlawful obstacles to the fulfillment of its obligations[.]" *Id*. at 1203 (quoting *United States v. Minnesota*, 270 U.S. 181, 194 (1926)).

In other words, the United States' standing to sue as the trustee of tribes is generally limited to advocating tribes' property rights established by the United States. Here, the United States

merely advances defenses belonging to specific nonmember Indian criminal defendants. But even an attempt to advocate the Tribes' prosecutorial jurisdiction would fail Plaintiff, because any authority that tribes have to prosecute nonmember Indians has at times been considered an "inherent prosecutorial power[,]" not extending from a Congressional grant. *U.S. v. Lara*, 541 U.S. 193, 199-200 (2004). Said differently, the United States did not give to the Creek Nation, Cherokee Nation, or Choctaw Nation that which it may purport to vindicate.

Plaintiff has not alleged any interference with any tribe's property rights or any other authority that the United States promised tribes. Therefore, Plaintiff's allegation that the "United States has an interest in the exercise of tribal criminal authority in Indian country[,]" Compl. ¶ 5, is legally unsupported. So, in addition to failing to establish standing overall, the United States lacks standing to bring this action in its limited role as trustee of the tribes.

Even if Plaintiff could clear the standing threshold (it cannot), the lawsuit must still be dismissed pursuant to abstention doctrines.

### III.     *YOUNGER* ABSTENTION

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C.A. § 2283. This provision reflects the "fundamental policy against federal interference with state criminal prosecutions[.]" *Younger*, 401 U.S. at 46. In *Younger*, the Supreme Court explained that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id*. at 45. The Court went on to hold that "[o]rdinarily, there should be no interference with such officers; primarily they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done." *Id*. The Supreme Court has put it more

bluntly, saying that "[w]hen there is a parallel, pending state criminal proceeding, federal courts *must* refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc.* 571 U.S. at 72 (emphasis added). The proper individuals to challenge a prosecutor's authority are the accused. *Younger*, 401 U.S. at 46. And the appropriate forums are the state courts where charges are pending and defenses may be lodged. *Id*. This principle is rooted in a notion referred to as "Our Federalism"—which emphasizes the "belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id*. at 44.

Under the *Younger* abstention doctrine, federal courts are required to abstain from exercising jurisdiction to interfere with state proceedings when the following three requirements are met:

> (1) [T]here is an ongoing state criminal, civil, or administrative proceeding,
>
> (2) [T]he state court provides an adequate forum to hear the claims raised in the federal complaint, and
>
> (3) [T]he state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019). Once those three criteria are satisfied, "*Younger* abstention is not discretionary." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999). "Thus, claims for declaratory relief and injunctive relief are subject to outright dismissal." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 523 (10th Cir. 2023).

By Plaintiff's own admission, each element is easily met here. And even if this lawsuit targets only the authority of a single district attorney but not criminal proceedings as a whole, abstention is still required. *Younger* "governs whether the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of

a proceeding directly." *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002).

   A.  *There are ongoing state criminal proceedings.*

   Plaintiff concedes in its Complaint that there are ongoing state criminal proceedings. *See Winn*, 945 F.3d at 1258 (holding the first element is satisfied where the parties do not dispute the existence of an ongoing state criminal proceeding). As the basis for its Complaint, Plaintiff cites the Ongoing Prosecutions. Compl. ¶ 35.a-c. Plaintiff has even filed an amicus submission in one of those cases—*State v. Williams*, United States' Submission as Amicus Curiae, CF-2023-311 (Dist. Ct. Rogers Cnty. Nov. 8, 2024). The fact that the United States is not an actual party to the Ongoing Prosecutions (though highly relevant to the Court's consideration of its standing and authority to sue as discussed above) is immaterial to consideration of the first element here, as the United States claims it is acting as a trustee on behalf of the tribes (Compl. ¶ 19). *See D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1230–31 (10th Cir. 2004) (holding that although a claim of a "genuine stranger" may proceed in federal court, "when in essence only one claim is at stake and the legally distinct party to the federal proceeding is merely an alter ego of a party in state court, *Younger* applies"). Plaintiff cannot both allege it is acting as the trustee of the tribes to establish standing and then avoid application of the abstention doctrine by contending it is a complete stranger to the state court prosecutions. The pendency of the Ongoing Prosecutions establishes this first element and also proves the next.

   B.  *The State court provides an adequate forum to hear the claims raised in the Complaint.*

   Regarding the second factor, "unless state law clearly bars the interposition of the federal statutory and constitutional claims," a plaintiff typically has "an adequate opportunity to raise federal claims in state court." *Winn*, 945 F.3d at 1258. State criminal proceedings fail to offer an

adequate opportunity to raise federal issues "'only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it.'" *Moore v. Sims*, 442 U.S. 415, 433 (1979) (internal citations omitted). A federal plaintiff bears the burden to establish "that state procedural law bar[s] presentation of its claims." *Id.* . at 432. This feat becomes nearly insurmountable in light of the Tenth Circuit's full confidence in state courts' ability to address federal issues given "the constitutional obligation of the state courts to uphold federal law[.]" *Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah*, 240 F.3d 871, 876 (10th Cir. 2001). *See also Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 12 (1987) (*Younger* abstention "'offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests'") (internal citation omitted). "*Younger* requires only the availability of an adequate state-court forum, not a favorable result in the state forum." *Winn*, 945 F.3d at 1258.

Oklahoma state courts are capable of fairly and fully adjudicating the issues that Plaintiff raises in this lawsuit as evidenced by the fact that the State courts: (1) have already addressed the issues; (2) continue to address the issues in ongoing criminal prosecutions; and (3) have proven to be adequate forums to resolve issues of the same or more substantial nature.

*First*, this lawsuit was filed only weeks after the OCCA issued its opinion in *O'Brien*. The *O'Brien* court analyzed and rejected each of Plaintiff's contentions. *See supra* pp. 2-3. In doing so, the OCCA held that the State has jurisdiction to prosecute nonmember Indians who commit non-major crimes in Indian country. Plaintiff's dismay with the OCCA's analysis and outcome does not legitimize this lawsuit. Indeed, the Tenth Circuit has made clear that state courts must provide only an "adequate state-court forum, not a favorable result in the state forum." *Winn*, 945 F.3d at 1258.

*Second*, Plaintiff itself cites the Ongoing Prosecutions in which State courts are actively adjudicating the issues raised here. Moreover, Plaintiff has conceded by its filing of an amicus submission in one of those Ongoing Prosecutions that those courts are adequate forums. Plaintiff advised the Rogers County District Court, "Given the United States' longstanding role with respect to the exercise of criminal jurisdiction in Indian country, the United States believes that a submission as *amicus curiae* addressing the question presented by Mr. Williams' Motion to Dismiss *would be of assistance to the Court in deciding the issue presented*." *State v. Williams*, United States' Motion for Leave to Participate as *Amicus Curiae*, No. CF-2023-311 (Rogers Co. Dist. Ct. 2023) (emphasis added). Plaintiff would not have filed its submission and represented to the State court an expectation that the court would decide the precise issue in this lawsuit, absent a sincere belief that the State court is capable of fairly and fully adjudicating the purported federal issues before it.

*Third*, State courts have proven to be more than adequate forums in which to resolve issues of this nature. For example, both *McGirt v. Oklahoma* and *Oklahoma v. Castro-Huerta*—cases to which Plaintiff repeatedly cites in its Complaint—stemmed from State criminal prosecutions and decisions issued by the OCCA. Although Plaintiff has expressed contentment with only the former outcome, Plaintiff implicitly conceded in a recent filing in this case that the process through which *Castro-Huerta* was decided allowed "all three prosecuting sovereigns within the State of Oklahoma—federal, state, and tribal—" a fair opportunity to participate. U.S.A.'s Resp. in Support of Mot. of the Cherokee Nation, Chickasaw Nation, and Choctaw Nation to Intervene as Plaintiffs, 4 n.1. Notably, in Castro-Huerta's State district court proceeding, only the Cherokee Nation filed a jurisdictional brief in support of dismissal. However, in *State v. Williams*, the Cherokee Nation, along with the Chickasaw Nation and the United States have filed amicus submissions. In other

words, all three sovereigns are involved in the *Williams* case, which is more than could have been said at the district court stage in *Castro-Huerta*. And the same right that McGirt and Castro-Huerta had to seek review by the OCCA and the United States Supreme Court will be available to each of the criminal defendants in the Ongoing Prosecutions.

If that is not enough, the State judicial system is again proving to be an adequate forum in the very case that prompted this lawsuit. In *City of Tulsa v. O'Brien*, O'Brien has the right to file a petition for a writ of certiorari with the United States Supreme Court within ninety days of February 5, 2025. This is the date that the OCCA denied O'Brien's Petition for Rehearing. In its denial, the OCCA reasoned, "The decision handed down in this case adequately disposed of the issues raised relying upon appropriate authority and the record on appeal. All questions duly submitted, including the issues raised in Appellee's motion to dismiss the appeal, his response brief, and the Muscogee (Creek) Nation's amicus brief, were reviewed by the Court prior to rendering the decision in this case." *City of Tulsa v. O'Brien*, Order Denying Pet. for Rehearing, S-2023-715 (Okla. Ct. Crim. App. Feb. 5, 2025). In other words, either the OCCA's words are hollow or the OCCA already fairly and fully adjudicated the issue of whether the State maintains criminal jurisdiction over non-member Indians who commit non-major crimes in Indian country.

No guesswork is needed to determine whether the State courts provide adequate forums to adjudicate the issues raised in Plaintiff's Complaint. The State courts have done so and are doing so now. Plaintiff has conceded as much.

C.  *The state proceedings involve important state interests.*

The third element of *Younger* abstention is satisfied both as a matter of law and fact. As a general matter, State criminal proceedings "are viewed as 'a traditional area of state concern'" and thus involve important state interests. *Winn*, 945 F.3d at 1258. More specifically, "Oklahoma's

important interest in enforcing its criminal laws through proceedings in its state courts remains axiomatic." *Fisher v. Whetsel*, 142 Fed.Appx. 337, 339 (10th Cir. 2005). Indeed, "[f]rom the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 589 U.S. 191, 211 (2020). The Supreme Court "has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court. . . ." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986).

As a sovereign entity, the State has a duty to protect its residents, enforce its laws, and uphold justice within its territorial boundaries. The Supreme Court recognized this in *Castro-Huerta*: "[T]he State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims." *Id.* at 651. "The State also has a strong interest in ensuring that criminal offenders—especially violent offenders—are appropriately punished and do not harm others in the State." *Id.* The Court in *Castro-Huerta* made no distinction between Indian and nonmember Indian offenders. The State's interests are obvious when, as here, the State criminal proceedings involve egregious crimes, such as child pornography and fentanyl possession in the presence of a child.

The Ongoing Prosecutions involve important State interests under any objective analysis.

D. *No exceptions to the bar on federal injunctions of state criminal proceedings apply.*

Injunctive intervention in state criminal proceedings is permissible only if (1) irreparable injury was "both great and immediate," (2) the state law is "flagrantly and patently violative of express constitutional prohibitions, or (3) Plaintiff could show "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." *Mitchum v. Foster*, 407 U.S. 225, 230-

31 (1972) (internal citations omitted).   Regarding the third factor, the plaintiff bears a "heavy burden" to establish bad faith or harassment, and the Tenth Circuit looks to three factors:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.

*Weitzel*, 240 F.3d at 877; *see also Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) ("[I]t is the plaintiff's 'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment.").

*First*, Plaintiff has not pled any imminent injury—or any injury at all. Nor could it. Defendant's prosecution of the criminal defendants has not impacted Plaintiff's authority to prosecute the same criminal occurrences; thus, no injury. And the Ongoing Prosecutions had been pending since as early as a year and a half prior to the filing of this lawsuit; thus, no imminency. *See State v. Bull*, CF-2023-226 (Rogers Co. Dist. Ct. June 29, 2023).

*Second*, Plaintiff also has not alleged that the Ongoing Prosecutions are motivated by a suspect class or in retaliation for an exercise of constitutional rights. Of course, Plaintiff could not sincerely contend that the prosecution of unconscionable conduct—manufacturing of child pornography and possession of fentanyl in the presence of a child—is motivated by anything other than concern for public safety.

*Third*, Plaintiff likewise has not attempted to show the existence of bad faith, harassment, or any other unusual circumstance warranting equitable relief. Any such effort would be futile. The OCCA's recent decision in *O'Brien*—the decision that seemingly sparked this litigation—the Supreme Court's decision in *Castro-Huerta*, and state district court rulings in the criminal

18

proceedings endorse the State's prosecutorial jurisdiction; thus, no frivolity or abuse of prosecutorial discretion.

In sum, even if Plaintiff tried (it has not), it could not fit its allegations into an exception to the non-discretionary bar on federal court intervention in state criminal proceedings. *Younger* abstention requires dismissal.

E. *Plaintiff's generalized request to enjoin potential future criminal proceedings is governed by the same Younger abstention considerations.*

Although *Younger* abstention is mandatory only where there is an "ongoing criminal prosecution," there "plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975); *see also Hicks v. Miranda*, 422 U.S. 332, 348–49 (1975) (holding that Younger abstention could not be avoided on the ground that no criminal prosecution was pending against appellees on the date the federal complaint was filed where appellees "had a substantial stake in the state proceedings").

> Where a federal plaintiff has "a substantial stake in the state proceedings" or has interests that are "intertwined" with the interests of a party to the state proceedings, abstention—sometimes referred to as derivative abstention—may be appropriate.

*Ellis v. Morzelewski*, 2:21-CV-639-TC, 2022 WL 3645850, at *7 (D. Utah Aug. 24, 2022); *see also Herrera v. City of Palmdale*, 918 F.3d 1037, 1046-47 (9th Cir. 2019) (holding that parties with "a sufficiently close relationship or sufficiently intertwined interests" may be "treated similarly for purposes of *Younger* abstention.") (collecting cases).

As argued above, Plaintiff lacks standing to properly assert claims as to future prosecutions not yet instituted that are subject to its request for injunctive relief. However, to the extent the Court considers any such generalized claims, this is a situation where Plaintiff's interests are so intertwined that derivative abstention is appropriate. Indeed, Plaintiff claims it is acting in its

sovereign authority under the "special relationship" that the United States has with Indian tribes—a relationship which it contends gives it an interest in this matter. Compl. ¶ 5; see also ¶ 19 (claiming "the United States as a trustee has an interest in protecting tribes' inherent sovereign power to exercise criminal jurisdiction over Indians"). Indeed, it is really only this special relationship that Plaintiff contends gives rise to its claims. But this special relationship cannot be used as both sword and shield. *Younger* abstention governs all prosecutions subject to Plaintiff's Complaint, not simply the Ongoing Prosecutions.

## IV.     COLORADO RIVER ABSTENTION

Dismissal is also appropriate under the *Colorado River* abstention doctrine. The *Colorado River* doctrine provides, "reasons of wise judicial administration" at times warrant "dismissal of a federal suit due to the presence of a concurrent state proceeding." *D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting *Colorado River* 424 U.S. at 818). Declining jurisdiction based on the *Colorado River* doctrine is appropriate in exceptional circumstances. *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). To determine whether such circumstances exist, courts must first determine whether the state and federal proceedings are parallel. *Id.*   "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* (*quoting New Beckley Mining Corp. v. International Union*, UMWA, 946 F.2d 1072, 1073 (4th Cir. 1991).

It is indisputable that the issues in Plaintiff's Complaint have been and are being litigated in State court forums. Plaintiff cites three such examples—the Ongoing Prosecutions. In one of those cases, the criminal defendant recently filed a twenty-three-page brief in which he exhaustively advanced each argument Plaintiff includes in its Complaint. *State v. Williams*, Reply

in Support of Motion to Dismiss for Lack of Jurisdiction, CF-2023-311 (Dist. Ct. Rogers Cnty. Feb. 14, 2025). There are clearly parallel state and federal proceedings.

The parties are also substantially the same in this and the State criminal proceedings. Indeed, Plaintiff, through its counsel in this case, filed an amicus submission in *State v. Williams*, approximately a month and a half prior to the filing of this lawsuit. *State v. Williams*, United States' Submission as Amicus Curiae, CF-2023-311 (Dist. Ct. Rogers Cnty. Nov. 8, 2024).[4] And obviously, the parties in the Ongoing Prosecutions are necessarily the same here and in the State matters.

Because the state and federal proceedings are parallel, the court must next determine "whether deference to state court proceedings is appropriate under the particular circumstances." *Fox*, 16 F.3d at 1082. To make that determination, courts may consider these factors: "(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction." *Id*. a (citing *Colorado River*, 424 U.S. at 818). Defendant will address each in turn.

This case does not involve property, so the first factor does not apply. Next, the federal forum is inconvenient for at least two reasons. First, appeals from this litigation will be addressed by the Tenth Circuit, in Colorado, whereas appeals from the State court proceedings will be and have been addressed by the OCCA, in Oklahoma. The travel and expense associated with the former is an unnecessary burden. Second, this federal proceeding requires substantial briefing and expenditure of additional taxpayer dollars only to have this Court address the exact issues being addressed—even already addressed—by State courts.

---

[4] Notably, the Cherokee Nation and Chickasaw Nation have also filed amicus submissions in *Williams*.

Moreover, this is quintessential piecemeal litigation, which is the paramount *Colorado River* consideration. *Colorado River*, 424 U.S. at 819. Plaintiff concedes as much through reliance on the Ongoing Prosecutions, which have been on file since as early as June 2023. Again, Plaintiff's contentions central to its Complaint are squared before the State court in at least *State v. Williams*, with Plaintiff's and Tribes' involvement. And the issues have already been addressed by OCCA and are ripe for appeal to the United States Supreme Court, in *O'Brien*. Should this case survive dismissal, the only wrinkle will be whether the matter should have been dismissed for the reasons set forth herein.

Last, the State courts obtained jurisdiction in the cases cited by Plaintiff as early as June 2023. This case was not filed until December 23, 2024—weeks after the OCCA issued its opinion in *O'Brien*. Each applicable *Colorado River* factor weighs in favor of dismissal.

## CONCLUSION

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger*, 401 U.S. at 43. In this case, the United States has attempted to throw that history out and turn established principles of federalism and comity on their head. The Ongoing Prosecutions are properly brought in State court, and they should be allowed to proceed without federal court interference. The arguments raised by Plaintiff have been raised in these and other similar state court criminal prosecutions as our nation's court system wisely provides. Nothing is preventing individual defendants from raising these arguments in those proceedings, or Plaintiff from submitting amicus briefs where appropriate. This improper collateral attack on Oklahoma's judicial system cannot be permitted to stand.

Accordingly, Defendant respectfully requests the dismissal of Plaintiff's Complaint due to lack of standing. Alternatively, even if standing is established, the lawsuit should be dismissed under either *Younger* abstention or *Colorado River* abstention.

Date: February 27, 2025                    Respectfully submitted,

                                           */s/ Trevor S. Pemberton*
                                           Trevor S. Pemberton, OBA #22271
                                           PEMBERTON LAW GROUP PLLC
                                           600 North Robinson Avenue, Suite 323
                                           Oklahoma City, OK 73102
                                           P: (405) 501-5054
                                           trevor@pembertonlawgroup.com

**Certificate of Service**

I hereby certify that on February 27, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

*/s/ Trevor S. Pemberton*