IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

      *Plaintiff*,

and

MUSCOGEE (CREEK) NATION,

      *Consolidated Plaintiff*,

v.

MATTHEW BALLARD, District Attorney
for the Twelfth Prosecutorial District of
Oklahoma, in his official capacity,

      *Defendant*.

Case No. 4:24-cv-00626-CVE-SH
(<u>BASE FILE</u>)

Consolidated with:
Case No. 4:25-cv-0050-CVE-SH

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................. 1

ARGUMENT ....................................................................................................................... 3

   I.    THE UNITED STATES HAS STANDING................................................................. 3

      A. Defendant's Actions Have Caused An Injury To The United States............................. 3

          1.   The United States has alleged an injury as a prosecuting sovereign in Indian country. ....................................................................................................... 4

          2.   The United States has alleged an injury as trustee for federally recognized Indian tribes........................................................................................................ 7

          3.   The United States is not limited to participation as amicus curiae in state criminal proceedings ................................................................................................. 10

      B. A Favorable Ruling Would Redress The United States' Injury. ................................. 11

  II.    THERE IS NO BASIS FOR ABSTENTION UNDER *YOUNGER*................................ 13

      A. The United States Is Not a Party To The State Criminal Proceedings ......................... 14

      B. There Are No State Interests Implicated That Warrant *Younger* Abstention .............. 16

      C. Even If The Threshold Requirements For *Younger* Abstention Were Met, An Exception To *Younger* Applies................................................................................. 18

      D. The Anti-Injunction Act Does Not Support *Younger* Abstention................................ 19

 III.  THERE IS NO BASIS FOR *COLORADO RIVER* ABSTENTION................................. 20

      A. Defendant Cannot Meet The Threshold Requirement of Identifying A Parallel State Court Case....................................................................................................... 20

      B. The Presence of Federal Questions Weighs Heavily Against *Colorado River* Abstention ............................................................................................................ 23

      C. Defendant's Remaining *Colorado River* Arguments Fail ........................................... 24

CONCLUSION.................................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Cases**

*Ankenbrandt v. Richards,*
    504 U.S. 689 (1992) ...................................................................................... 13

*Benavidez v. Eu,*
    34 F.3d 825 (9th Cir. 1994) ......................................................................... 16

*Blatchford v. Native Vill. of Noatak,*
    501 U.S. 775 (1991) ........................................................................................ 8

*Bosse v. Oklahoma,*
    580 U.S. 1 (2016) ............................................................................................ 3

*Bronson v. Swensen,*
    500 F.3d 1099 (10th Cir. 2007) ................................................................... 12

*Buck v. Myers,*
    244 F. App'x 193 (10th Cir. 2007) .............................................................. 18

*Chamber of Com. of U.S. v. Edmondson,*
    594 F.3d 742 (10th Cir. 2010) ............................................................... 12, 13

*Chapman v. Oklahoma,*
    472 F.3d 747 (10th Cir. 2006) ..................................................................... 17

*Cheyenne–Arapaho Tribes v. Oklahoma,*
    618 F.2d 665 (10th Cir. 1980) ..................................................................... 24

*City of Tulsa v. O'Brien,*
    2024 OK CR 31, 2024 WL 5001684 (Dec. 5, 2024) .................................. 23

*Coalition of Ariz./N.M. Cntys. for Stable Econ. Growth v. U.S. Dep't of Interior,*
    100 F.3d 837 (10th Cir. 1996) ..................................................................... 11

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ............................................................................... passim

*Consumer Data Indus. Ass'n v. King,*
    678 F.3d 898 (10th Cir. 2012) ............................................................... 12, 13

*D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.,*
    705 F.3d 1223 (10th Cir. 2013) ......................................................... 13, 20, 24

*D.L. v. Unified Sch. Dist. No. 497,*
    392 F.3d 1223 (10th Cir. 2004) ............................................................. 14, 15

*DeCoteau v. Dist. Cnty. Court*,
    420 U.S. 425 (1975) ........................................................................................................ 24

*Denezpi v. United States*,
    596 U.S. 591 (2022) ......................................................................................................... 5

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975) ....................................................................................................... 14

*Dutcher v. Matheson*,
    840 F.3d 1183 (10th Cir. 2016) ..................................................................................... 22

*Fort Belknap Indian Cmty. v. Mazurek*,
    43 F.3d 428 (9th Cir. 1994) ........................................................................................... 17

*Fox v. Maulding*,
    16 F.3d 1079 (10th Cir. 1994) ....................................................................... 20, 21, 22, 25

*French v. Mattheyer*,
    Case No. CIV-09-0015-F, 2010 WL 11606970 (W.D. Okla. Jan. 27, 2010) ......................... 15

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) ....................................................................................................... 18

*Harper v. PSC*,
    396 F.3d 348 (4th Cir. 2005) ......................................................................................... 18

*Hudson v. Harpe*,
    No. 23-6181, 2024 WL 262695 (10th Cir. 2024) ............................................................ 24

*In re Debs*,
    158 U.S. 564 (1895) ......................................................................................................... 4

*Kansas Nat. Res. Coal. v. U.S. Dep't of Interior*,
    971 F.3d 1222 (10th Cir. 2020) ........................................................................................ 4

*Larson v. Valente*,
    456 U.S. 228 (1982) ....................................................................................................... 12

*Leiter Minerals, Inc. v. United States*,
    352 U.S. 220 (1957) ....................................................................................................... 20

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
    847 F.3d 1221 (10th Cir. 2017) ..................................................................................... 22

*Marino v. Ortiz*,
    484 U.S. 301 (1988) ....................................................................................................... 11

*McGirt v. Oklahoma*,
   591 U.S. 894 (2020) ............................................................................ 1, 2, 6

*Moe v. Confederated Salish & Kootenai Tribes*,
   425 U.S. 463 (1976) ............................................................................... 7, 8

*Molina v. Aurora Loan Serv., LLC*,
   635 F. App'x 618 (11th Cir. 2015) ......................................................... 20

*Moses H. Cone Mem. Hosp. v. Mercury Const. Co.*,
   460 U.S. 1 (1983) ............................................................................... 21, 23

*N.L.R.B. v. Nash-Finch Co.*,
   404 U.S. 138 (1971) .................................................................................. 20

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe*,
   471 U.S. 845 (1985) ................................................................................... 9

*Negonsott v. Samuels*,
   507 U.S. 99 (1993) ..................................................................................... 4

*New Mexico v. U.S. Dep't of the Interior*,
   854 F.3d 1207 (10th Cir. 2017) ................................................................. 8

*Oglala Sioux Tribe v. Schwarting*,
   894 F. Supp. 2d 1195 (D. Neb. 2012) ....................................................... 8

*Oklahoma v. Ashley*,
   CF-2024-421 (Dist. Ct. Rogers Cnty.) .......................................... 6, 11, 25

*Oklahoma v. Castro-Huerta*,
   597 U.S. 629 (2022) ............................................................................... 2, 3

*Oklahoma v. Billey*,
   CF-2024-00073 (Dist. Ct. Rogers Cnty.) ................................................ 25

*Oklahoma v. Billey*,
   CF-2024-00117 (Dist. Ct. Craig Cnty.) ................................................... 25

*Oklahoma v. Bull*,
   CF-2023-00226 (Dist. Ct. Rogers Cnty.) ............................................ 7, 25

*Oklahoma v. Williams*,
   CF-2023-311 (Dist. Ct. Rogers Cnty.) ................................................. 3, 25

*Okla. Tax Com'n v. Sac & Fox Nation*,
   508 U.S. 114 (1993) ................................................................................... 5

iv

*Phelps v. Hamilton*,
  59 F.3d 1058 (10th Cir. 1995) ............................................................................. 19

*Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*,
  No. 16–CV–0681–CVE–TLW, 2017 WL 2347188 (N.D. Okla. May 30, 2017) .................. 21

*Prairie Band of Potawatomi Indians v. Pierce*,
  253 F.3d 1234 (10th Cir. 2001) ............................................................................ 10

*Requena v. Roberts*,
  893 F.3d 1195 (10th Cir. 2018) ............................................................................ 22

*Rowe v. N.H. Motor Transp. Ass'n*,
  552 U.S. 364 (2008) ............................................................................................ 5

*S. Utah Wilderness All. v. Palma*,
  707 F.3d 1143 (10th Cir. 2013) .............................................................................. 6

*Sac & Fox Nation v. Hansen*,
  47 F.3d 1061 (10th Cir. 1995) .............................................................................. 19

*SEC v. U.S. Realty & Improvement Co.*,
  310 U.S. 434 (1940) ............................................................................................ 5

*Seneca-Cayuga Tribe v. Oklahoma ex rel. Thompson*,
  874 F.2d 709 (10th Cir. 1989) ................................................................. 9, 17, 18, 23

*Smith v. Apple*,
  264 U.S. 274 (1924) .......................................................................................... 20

*State ex rel. Matloff v. Wallace*,
  497 P.3d 686 (Okla. Crim. App. 2021) ................................................................... 2

*State v. Klindt*,
  782 P .2d 401 (Okla. Crim. App. 1989) ................................................................... 5

*Stitt v. City of Tulsa*,
  No. M-2022-984 (Crim. App. Okla.) ...................................................................... 3

*Stitt v. City of Tulsa*,
  2025 OK CR 5, 2025 WL 719122 (Mar. 6, 2025) ..................................................... 23

*Sycuan Band of Mission Indians v. Roache*,
  54 F.3d 535 (9th Cir. 1995) ............................................................................ 17, 18

*Tulalip Tribes v. Washington*,
  349 F. Supp. 3d 1046 (W.D. Wash. Oct. 4, 2018) ..................................................... 8

*United States v. Bd. of Cnty. Comm'rs,*
    184 F. Supp. 3d 1097 (D. N.M. 2015) ................................................................. 11

*United States v. Bull,*
    4:23-cr-00283 (N.D. Okla.) ........................................................................................ 7

*United States v. City of Las Cruces,*
    289 F.3d 1170 (10th Cir. 2002) ............................................................................... 21

*United States v. Henshaw,*
    388 F.3d 738 (10th Cir. 2004) ................................................................................... 4

*United States v. John,*
    437 U.S. 634 (1978) .................................................................................................... 4

*United States v. Raines,*
    362 U.S. 17 (1960) ...................................................................................................... 4

*United States v. Republic Steel Corp.,*
    362 U.S. 482 (1960) .................................................................................................... 4

*United States v. Sands,*
    968 F.2d 1058 (10th Cir. 1992) ............................................................................ 2, 6

*Utah v. Evans,*
    536 U.S. 453 (2002) .................................................................................................. 12

*Ute Indian Tribe of the Uintah & Ouray Resrv. v. Utah,*
    790 F.3d 1000 (10th Cir. 2015) ....................................................................... passim

*Ute Indian Tribe v. Lawrence,*
    875 F.3d 539 (10th Cir. 2017) ................................................................................. 16

*Ute Indian Tribe v. Lawrence,*
    22 F.4th 892 (10th Cir. 2022) .................................................................................. 24

*Warth v. Seldin,*
    422 U.S. 490 (1975) .................................................................................................... 4

*Williams v. Lee,*
    358 U.S. 217 (1959) .................................................................................................. 10

*Winn v. Cook,*
    945 F.3d 1253 (10th Cir. 2019) ............................................................................... 19

*Winnebago Tribe v. Stoval,*
    341 F.3d 1202 (10th Cir. 2003) ......................................................................... 17, 18

*Wolf v. Ingram,*
    275 F.3d 1253 (10th Cir. 2002) .................................................................. 13, 14, 16

*Younger v. Harris,*
    401 U.S. 37 (1971) ............................................................................................. 19

**Statutes**

18 U.S.C. § 1151 ....................................................................................................... 2

18 U.S.C § 1152 ........................................................................................................ 4

18 U.S.C § 1153 ........................................................................................................ 4

25 U.S.C. § 3601 .................................................................................................... 8, 9

Anti-Injunction Act, 28 U.S.C. § 2283 ................................................................... 19

Okla. Stat. tit. § 2024 ............................................................................................. 11

Oklahoma Enabling Act, 34 Stat. 267 (1906) .......................................................... 5

**Other Authorities**

13 CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. § 3531 (3d ed. 2008) ......................... 12

14 CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. § 3651 (4th ed. 2024) ......................... 4

## INTRODUCTION

The United States brought this case to prevent Defendant Matthew Ballard, District Attorney for the Twelfth Prosecutorial District of Oklahoma ("Defendant"), from unlawfully prosecuting Indians for conduct occurring in Indian country. Defendant's assertion that the State of Oklahoma has such jurisdiction violates longstanding Supreme Court and Tenth Circuit precedent, along with fundamental principles of federal Indian law that have been in place since the Founding Era and are rooted in the structure of the U.S. Constitution.

To avoid addressing the merits of the United States' Complaint (ECF No. 2) and Motion for Preliminary Injunction (ECF No. 5), Defendant filed a Motion to Dismiss (ECF No. 52), in which he makes two truly confounding arguments: (1) that the United States lacks standing to protect its own criminal jurisdiction and the jurisdiction of federally recognized tribes; and (2) that this Court should relinquish its jurisdiction to decide an important question of federal law in light of the criminal proceedings Defendant himself unlawfully commenced in state court. As demonstrated below, the United States clearly has standing to bring this action, both on its own behalf and as trustee for federally recognized tribes. As for abstention, Defendant does not come close to establishing the rare circumstances under which this Court must surrender its virtually unflagging obligation to exercise its jurisdiction. At bottom, Defendant's arguments are a thinly veiled attempt to avoid federal review of, and the application of federal law to, his plainly unlawful prosecutions in Indian country.

## FACTUAL AND PROCEDURAL BACKGROUND

For many years, Oklahoma state courts rejected any suggestion that Indian reservations continued to exist in Oklahoma after statehood. In 2020, however, the Supreme Court reached the opposite conclusion, holding that the Muscogee (Creek) Reservation remained intact. *McGirt*

*v. Oklahoma*, 591 U.S. 894 (2020). As a result, the Reservation remained Indian country under 18 U.S.C. § 1151(a), and the United States, not Oklahoma, had jurisdiction over crimes committed there by Indians. 591 U.S. at 929-30. Based on *McGirt*, the Oklahoma Court of Criminal Appeals ("OCCA") later concluded that the Cherokee Reservation (among others) also remained intact. *See State ex rel. Matloff v. Wallace*, 497 P.3d 686, 689 (Okla. Crim. App. 2021).

The United States was already exercising criminal jurisdiction in Oklahoma Indian country for decades prior to *McGirt. See United States v. Sands*, 968 F.2d 1058, 1062 (10th Cir. 1992)*;* 18 U.S.C. § 1151(c). After *McGirt*, pursuant to nationally applicable federal law, the United States' exclusive criminal jurisdiction now extends to the reservations acknowledged by *McGirt* and its progeny. *See, e.g.*, *McGirt*, 591 U.S. at 898 ("State courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country.'"); *see also* 18 U.S.C. § 1151(a). That is, even though *McGirt* changed the general understanding of the reservation status of these lands, it did not change the rules regarding criminal jurisdiction in Indian country. To the contrary, *McGirt* confirmed that federal and tribal jurisdiction over Indian criminal defendants in Indian country is exclusive of the states unless Congress says otherwise.

Nevertheless, dissatisfied with *McGirt*, Oklahoma asked the Supreme Court to overturn it just one year later. *See* Pet. for Certiorari, 2021 WL 4296002, at *4, *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022). Although Oklahoma's efforts to overturn *McGirt* in *Castro-Huerta* failed, the Supreme Court considered the "narrow jurisdictional issue" of "the State's exercise of jurisdiction over crimes committed by *non-Indians* against Indians in Indian country." *Castro-Huerta,* 597 U.S. at 648, 653 (emphasis added). The Supreme Court held, for the first time, that the states have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indian victims in Indian country. *Id.* at 654-58. At the same time, however, the Court specifically

2

and repeatedly disclaimed any intent to address state jurisdiction over Indians in Indian country. 597 U.S. at 639 n.2, 650 n.6, 655 n.9. Instead, the Court stressed that its opinion was confined to the facts before it: state jurisdiction over non-Indians. *Id.*[1]

Despite the question of state jurisdiction over Indians not being before the Supreme Court in *Castro-Huerta,* and despite the Court expressly limiting its opinion in *Castro-Huerta* to state jurisdiction over non-Indians, some state prosecutors in Oklahoma—including Defendant—have argued that *Castro-Huerta* silently reversed the longstanding rule that the states lack criminal jurisdiction over Indians in Indian country. These attempts to expand the holding of *Castro-Huerta* through state prosecutions violate clear federal law and have created jurisdictional confusion in Oklahoma. Although the United States has attempted to clear up that confusion by participating as amicus curiae in *Stitt v. City of Tulsa*, No. M-2022-984 (Crim. App. Okla.), and *Oklahoma v. Williams*, CF-2023-311 (Dist. Ct. Rogers Cnty.), it is impossible for the United States to monitor and participate in every state prosecution that implicates its interests. Nor is the United States required to do so. Instead, the United States brought this case to stop Defendant's unlawful assertion of state jurisdiction in Indian country. As demonstrated below, the United States undoubtedly has standing to bring this case, and no abstention doctrine prevents it.

## ARGUMENT

### I.     THE UNITED STATES HAS STANDING

#### A.     Defendant's Actions Have Caused An Injury To The United States.

The United States has standing to bring this action, both on its own behalf and as trustee for federally recognized tribes. In general, the United States can bring suit if it has "an interest to

---

[1] Nor did the Supreme Court overrule any precedent regarding the states' lack of criminal jurisdiction over Indians in Indian country, and thus the overwhelming and unanimous case law precluding such jurisdiction remains good law. *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (Supreme Court has "prerogative alone to overrule one of its precedents"); *see* ECF No. 5 at 12-13 (discussing precedent precluding state jurisdiction over Indians in Indian country).

protect or defend." *United States v. Republic Steel Corp.*, 362 U.S. 482, 492 (1960); *see In re Debs*, 158 U.S. 564, 584-86 (1895); *United States v. Henshaw*, 388 F.3d 738, 743 (10th Cir. 2004). The United States must have a cognizable interest of its own, but a governmental interest is sufficient. *See United States v. Raines*, 362 U.S. 17, 27 (1960); 14 CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. § 3651 (4th ed. 2024) (United States' interest may be to vindicate government policies or other sovereign or quasi-sovereign interests). As alleged in the Complaint (ECF No. 2) and explained in the Motion for Preliminary Injunction (ECF No. 5 at 1-3, 22-25), the United States has a variety of governmental interests to protect and defend here. *See Kansas Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) ("At the pleading stage, general factual allegations of injury resulting from defendant's conduct" may establish standing.); *Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

       1.    The United States has alleged an injury as a prosecuting sovereign in Indian country.

The United States has a significant interest in the allocation of criminal jurisdiction in Indian country. That interest includes protecting the United States' own jurisdiction, granted by Congress, to address certain crimes committed by Indians in Indian country. *See, e.g.*, 18 U.S.C §§ 1152, 1153. Unless Congress says otherwise, the United States' jurisdiction in Indian country is exclusive of the states. *See, e.g.*, *Negonsott v. Samuels*, 507 U.S. 99, 103 (1993); *United States v. John*, 437 U.S. 634, 651 (1978). Congress, pursuant to its exclusive and plenary authority over Indian affairs, has created a comprehensive statutory system governing state assumption of criminal jurisdiction over Indians in Indian country. ECF No. 5 at 17-19. And the State of

Oklahoma has not assumed jurisdiction as Congress has required. *See, e.g.*, *Okla. Tax Com'n v. Sac & Fox Nation*, 508 U.S. 114, 125 (1993) ("Oklahoma did not assume jurisdiction pursuant to Pub. L. 280" and thus lacks "either civil or criminal jurisdiction" on Indian allotments); *State v. Klindt*, 782 P .2d 401, 403 (Okla. Crim. App. 1989) (same). In fact, through Section 1 of the Oklahoma Enabling Act, ch. 3335, 34 Stat. 267 (1906), the United States required Oklahoma to disclaim such jurisdiction at statehood. ECF No. 5 at 20.

By asserting criminal jurisdiction over Indians in Indian country, Defendant attempts to usurp Congress's plenary authority over Indian affairs, as well as the United States' prosecutorial authority in Indian country, which Congress carefully crafted over decades to be exclusive of the states. *See SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 460 (1940) (recognizing the federal government's "interest in the maintenance of its statutory authority and the performance of its public duties"). These injuries to the United States are compounded by the fact that, if Defendant's actions are allowed to stand, other states could be similarly emboldened to assert criminal jurisdiction over Indians in Indian country in violation of federal law. *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008) (allowing a state to set a requirement that conflicts with federal law "would allow other States to do the same").

Defendant argues that the United States has not been harmed because state prosecutions in violation of federal law "do not impact Plaintiff's authority to prosecute" and "an individual may be prosecuted by separate sovereigns for the same conduct." ECF No. 52 at 8 (citing *Denezpi v. United States*, 596 U.S. 591 (2022)). Defendant also claims that state prosecutions like the ones he has brought "have existed for over a century." *Id.* That is all wrong. Although the Muscogee (Creek) and Cherokee Reservations have only recently been confirmed as not disestablished, Oklahoma has never validly exercised criminal jurisdiction over Indians in Indian

country. *See, e.g.*, *Sands*, 968 F.2d at 1062 ("The State of Oklahoma does not have jurisdiction over a criminal offense committed by one Creek Indian against another in Indian country."); *cf. McGirt*, 591 U.S. at 918 (finding "the State's past prosecutions a meaningless guide for determining what counted as Indian country"). And Defendant's citation to *Denezpi* does not help him. Although *Denezpi* confirmed that an individual may be prosecuted by separate sovereigns for the same conduct, that is only true if the sovereign in question has jurisdiction to bring that prosecution in the first place.

As a practical matter, and as alleged in the Complaint, Defendant's actions have impacted the United States' ability to exercise its prosecutorial authority in Indian country by creating a patchwork system of laws, where some state prosecutors continue to comply with federal law while others, like Defendant, ignore it. *See* ECF No. 2 at ¶¶ 31, 35, 40. Because Defendant is willing to bring prosecutions in violation of federal law, cases are being referred by law enforcement to Defendant for prosecution instead of the proper jurisdiction with authority to prosecute them. This makes it impossible for the United States to know how many prosecutions Defendant has brought in violation of federal law, and it may prevent the United States from prosecuting criminals over whom it (and not the State) has jurisdiction. *See* ECF No. 52 at 5 (Defendant admitting to charging a major crime (child neglect), over which he does not have jurisdiction, in *Oklahoma v. Ashley*, CF-2024-421 (Dist. Ct. Rogers Cnty.)).[2] Cases unlawfully tried by the State will have to be retried by the United States or tribes, creating potential issues

---

[2] Although Defendant purports to have dismissed the major crime charge on February 27, 2025, standing is determined based on the circumstances when the Complaint is filed. *See, e.g.*, *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (citations omitted). Defendant is therefore wrong that this case "is actually limited to nonmember Indians accused of non-major crimes in Indian country." *See* ECF No. 52 at 6.

with applicable statutes of limitations and available witnesses and evidence, and potentially re-victimizing case victims.

Finally, the United States' filing of criminal charges against Brayden Bull does not "highlight[] that Plaintiff has not suffered an injury." *See* ECF No. 52 at 8. The opposite is true—that case illustrates the jurisdictional chaos that Defendant is creating. In October 2024, Brayden Bull pled guilty to federal charges and was sentenced to 50 years in federal prison. *See United States v. Bull*, 4:23-cr-00283 (N.D. Okla.). Despite the federal government prosecuting Bull, and despite Bull receiving a 50-year sentence and being incarcerated in a federal prison, Defendant has repeatedly attempted to have Bull released to be tried for the same conduct in state court. *Oklahoma v. Bull*, CF-2023-00226 (Dist. Ct. Rogers Cnty.). The United States recently learned that Defendant secured the release of Bull from federal custody, over the objection of the United States Attorney's Office for the Northern District of Oklahoma, and Bull appeared in state court on February 10. *See* ECF No. 58 at 2-3.

2.    The United States has alleged an injury as trustee for federally recognized Indian tribes.

The United States also has an interest in protecting tribal sovereignty as trustee for federally recognized tribes. Defendant claims that the United States' standing to sue on behalf of tribes is "generally limited to advocating tribes' property rights established by the United States." ECF No. 52 at 11. Given the United States' own interests as a prosecuting sovereign, which Defendant's actions have harmed as described above, the United States' standing to sue as tribal trustee is largely beside the point. Nevertheless, the Supreme Court has long recognized that the relationship between the United States and tribes, as grounded in treaties and subsequent legislation, establishes the United States' standing to sue on behalf of tribes. *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 474 n.13 (1976); *see also, e.g.*,

*Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 783 (1991) (holding that United States has "standing to sue on behalf of Indian tribes as guardian of the tribe's rights" (citation omitted)).

Defendant's argument that the United States' standing is limited to "advocating tribes' property rights" (*see* ECF No. 52 at 10) reflects his profound misunderstanding of federal Indian law. *See, e.g.*, *Moe*, 425 U.S. at 474 n.13 (United States has standing to challenge state's assertion of jurisdiction to tax individual Indians in Indian country); *New Mexico v. U.S. Dep't of the Interior*, 854 F.3d 1207, 1235 (10th Cir. 2017) ("The United States may sue on behalf of a tribe in its role as trustee" to enforce tribe's rights under the Indian Gaming Regulatory Act); *Tulalip Tribes v. Washington*, 349 F. Supp. 3d 1046 (W.D. Wash. Oct. 4, 2018) (United States' intervention to preempt state collection of taxes from non-Indian owned businesses on Indian reservation). The United States' trust responsibility is rooted in protecting tribal sovereignty. *See* 25 U.S.C. § 3601(2) ("[T]he United States has a trust responsibility to each tribal government that includes the protection of the sovereignty of each tribal government . . . .") That many of the suits brought by the United States on behalf of tribes relate to property is of little consequence. The critical factor is that the United States has a trust relationship with a tribe and an interest in protecting that tribe's sovereignty as well as all the rights that go with it.[3]

Defendant is also incorrect that the United States "has not alleged any interference with any . . . authority that the United States promised tribes." *See* ECF No. 52 at 11. As alleged in the

---

[3] Defendant cites *Oglala Sioux Tribe v. Schwarting*, 894 F. Supp. 2d 1195, 1203-04 (D. Neb. 2012), which recognized "the United States' authority to vindicate *its own interest* in preserving the protections it has established for Indian property rights." *See* ECF No. 52 at 10. But recognizing the United States' authority to protect tribal property rights does not mean the United States lacks authority to protect other tribal rights. And here, the United States' standing is not "grounded in a general eleemosynary or *parens patriae* interest in the well-being of Indians," as it would have been in *Schwarting*. 894 F. Supp. 2d at 1203-04. Here, it is grounded in the United States' own interest in protecting the sovereign right of tribes to exercise criminal jurisdiction over Indians on their reservations.

8

Complaint, the United States made treaty promises to both the Muscogee (Creek) and Cherokee Nations that they would continue to retain exclusive criminal jurisdiction over Indians on their respective Reservations, ECF No. 2 at ¶¶ 20-28, and Congress has repeatedly confirmed those promises through subsequent legislation, *id.* at 10, 12-13, 15.

Nor is the United States' "interest in the exercise of tribal criminal authority in Indian country . . . legally unsupported." ECF No. 52 at 11. Both the Supreme Court and Tenth Circuit have recognized that the United States has a special relationship with Indian tribes and has long been "committed to a policy of supporting tribal self-government and self-determination." *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 856 & n.20 (1985); *see* 25 U.S.C. § 3601(2). That policy extends to supporting "tribal justice systems," which Congress has recognized as "an essential part of tribal governments." 25 U.S.C § 3601(5); *see also Ute Indian Tribe of the Uintah & Ouray Resrv. v. Utah,* 790 F.3d 1000, 1007 (10th Cir. 2015) (enjoining state prosecutions of Indians for conduct occurring in Indian country and recognizing "the 'paramount federal policy' of ensuring that Indians do not suffer interference with their efforts to 'develop . . . strong self-government'" (quoting *Seneca-Cayuga Tribe v. Oklahoma ex rel. Thompson,* 874 F.2d 709, 716 (10th Cir. 1989)). Indeed, Congress has demonstrated its support for tribal public safety programs and criminal justice systems through both legislation and funding. ECF No. 2 at ¶¶ 16-17. The United States' interest in tribes' exercising their criminal authority in Indian country is obvious and well-supported.

Lastly, Defendant argues that, even if the United States can sue on behalf of tribes, only the "individual criminal defendants . . . can claim specific injury" here. ECF No. 52 at 7; *see also id.* at 11. This makes no sense. A state's unlawful prosecution of individual Indians in Indian country is "itself an infringement on tribal sovereignty" that constitutes an irreparable injury to

the tribe. *Ute Indian Tribe*, 790 F.3d at 1005; *see also, e.g.*, *Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1242 (10th Cir. 2001*)* (tribe has standing because "[t]he state's refusal to extend recognition" to tribally issued vehicle registrations and titles, and prosecution of individual Indians based on failure to comply with state law, "causes an obvious harm to the tribe: interference with or infringement on tribal self-government," protection of which "is the foundation of federal Indian law"). And "to allow the exercise of state jurisdiction [over Indians] would undermine authority of the tribal courts of Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Williams v. Lee*, 358 U.S. 217, 223 (1959). Defendant simply ignores this controlling case law.

        3.     The United States is not limited to participation as amicus curiae in state criminal proceedings.

Defendant points to the United States' participation as amicus in appeals of individual criminal defendants, like *McGirt* and *Castro-Huerta*, as if the United States' amicus participation in those cases means it somehow lacks standing to bring this one. ECF No. 52 at 7-8. It obviously does not. And amicus participation in state criminal proceedings is not the only "proper channel[]" for the United States to seek relief. *See* ECF No. 52 at 7. That is made clear by the Tenth Circuit cases cited above. *See Ute Indian Tribe*, 790 F.3d at 1005; *Pierce*, 253 F.3d at 1250-51. In *Ute Indian Tribe* and *Pierce*, the tribes were not limited to participating as amicus in the state criminal proceedings from which they sought relief. Rather, in each case, a federal court enjoined a state or its political subdivision from prosecuting Indians in violation of federal law. That is what the United States seeks here. If anything, previous participation as amicus in state criminal proceedings only proves that the United States has an interest in the allocation of criminal jurisdiction in Indian country, which gives it standing to bring this case.

10

To be sure, the United States is not limited to participation as amicus for good reason. First, being limited to amicus participation would assign the United States the impossible task of constantly tracking all prosecutions brought by all prosecutors across Oklahoma to determine whether they are in violation of federal law. Given the clear pattern of unlawful prosecutions established by Defendant, the United States should not be required to play "whack-a-mole" in state court to protect its interests. Second, if limited to amicus participation, the United States would be deprived of the opportunity and right to litigate its own claims, including the right to raise legal issues, participate in discovery, and appeal any unfavorable decision. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (citations omitted); *United States v. Bd. of Cnty. Comm'rs*, 184 F. Supp. 3d 1097, 1117 (D. N.M. 2015); *cf. Coalition of Ariz./N.M. Cntys. for Stable Econ. Growth v. U.S. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) ("[T]he right to file a brief as amicus curiae is no substitute for the right to intervene as a party in the action under Rule 24(a)(2).").[4] As amicus, the United States would be reliant on the individual criminal defendant to raise issues, file motions, and decide whether to appeal or not. For a number of reasons, however, an individual criminal defendant may choose to accept a plea bargain or choose not to appeal, or the State may choose to drop charges after bringing an unlawful prosecution instead of referring it, *see Ashley*, CF-2024-421, which would leave the United States without a vehicle to seek relief, and allow Defendant to avoid it.

### B.    A Favorable Ruling Would Redress The United States' Injury.

Next Defendant argues that, even if the United States has been injured, that injury cannot be redressed through this lawsuit. ECF No. 52 at 9-10. The "connection" between causation and

---

[4] Unlike the Oklahoma Rules of Civil Procedure, which allow for intervention as a party, *see* Okla. Stat. tit. 12, § 2024, the Oklahoma Rules of Criminal Procedure do not.

redressability is "very practical—if the injury is not caused by the challenged acts, an order directed to them will not redress it." *Bronson v. Swensen*, 500 F.3d 1099, 1111-12 (10th Cir. 2007) (quoting 13 CHARLES A. WRIGHT, ET AL., FED. PRAC. & PROC. § 3531.5). "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (emphasis in original). In other words, a plaintiff need not show "that there is no other means by which" it may be injured, *Larson*, 456 U.S. at 244 n.15, or that the "relief sought . . . completely redress[es] a discrete injury," *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 904 (10th Cir. 2012). Instead, "the relevant inquiry is whether . . . the plaintiff has shown *an* injury to himself that is likely to be redressed by a favorable decision." *Larson*, 456 U.S. at 243 n.15. The United States has shown redressability because an injunction would prevent Defendant from prosecuting Indians in violation of federal law. *See Bronson*, 500 F.3d at 1110-12 (redressability prong met where state actor authorized to enforce state law would be enjoined from enforcement).

Nevertheless, Defendant speculates that state prosecutions in violation of federal law "could continue" through appearance of the Oklahoma Attorney General or appointment of other counsel by the Governor of Oklahoma, or by district attorneys in other prosecutorial districts. ECF No. 52 at 8-10. Defendant ignores the obvious: there is no reason or ability to enjoin other state officials unless and until they violate federal law. Instead, the Court "may assume it is substantially likely that [other] officials would abide by an authoritative interpretation of the . . . provision . . . even though they would not be directly bound by such a determination." *See Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 757 n.16 (10th Cir. 2010) (quoting *Utah v. Evans*, 536 U.S. 453, 460 (2002)). And the Tenth Circuit has already rejected the argument

12

that an injury caused by a state official is not redressable even though others can cause the same injury. *See Consumer Data Indus. Ass'n*, 678 F.3d at 904-05 (injury redressable even though "state defendant shares enforcement power with private litigants"); *Edmondson*, 594 F.3d at 757-58 n.16 (injury caused by Oklahoma Attorney General enforcing state law redressable even though "some public employers outside the scope of the injunction might refuse to enter into contracts" in accordance with state law). The possibility that others may cause an injury to the United States simply does not mean that the injury caused by Defendant is not redressable.

\* \* \*

In sum, the United States has standing to bring this action, both on its own behalf and as trustee for federally recognized tribes.

## II.    THERE IS NO BASIS FOR ABSTENTION UNDER *YOUNGER*

Abstention "is the exception, not the rule." *Wolf v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)). Instead, the "general rule" is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). In line with abstention being the exception to the rule, *Younger* abstention should be "rarely . . . invoked, because the federal courts have a virtually unflagged obligation . . . to exercise the jurisdiction given them.'" *Wolf,* 275 F.3d at 1267 (citation omitted).

13

Defendant seeks to make the exception the rule, arguing that this Court should surrender

its jurisdiction and defer on an important question of federal law in light of state criminal

proceedings commenced by Defendant. In doing so, Defendant grossly overstates the *Younger*

abstention doctrine. The United States is not a party to any of the ongoing state court criminal

cases cited by Defendant. *See* ECF No. 52 at 8-10. That alone precludes the application of

*Younger* abstention. Moreover, as the Tenth Circuit has already determined, there are no

important state interests implicated in questions of jurisdiction over Indians in Indian country.

For these reasons, and others stated below, *Younger* abstention does not apply.

### A.    The United States Is Not a Party To The State Criminal Proceedings.

*Younger* abstention applies only "when [the] federal proceedings would (1) interfere with

an ongoing state judicial proceeding (2) that implicates important state interests and (3) affords

an adequate opportunity to raise the federal claims." *Wolf*, 275 F.3d at 1267 (citation omitted).

Taking the last requirement first, the United States is not a party to any of the criminal

proceedings commenced by Defendant, and those proceedings therefore cannot offer the United

States an adequate opportunity to raise and litigate its federal claims. *E.g., Doran v. Salem Inn,

Inc.*, 422 U.S. 922, 930 (1975) (*Younger* did not apply to claims by federal plaintiffs against

whom no state proceedings were pending). "[I]t is proper for a federal court to exercise

jurisdiction over the claim of a genuine stranger to an ongoing state proceeding even though a

federal decision clearly could influence the state proceeding by resolving legal issues identical to

those raised in state court[.]" *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1230 (10th Cir.

2004). Abstention is not required "[s]o long as the [federal plaintiff] has its own distinct claim to

pursue," even if its position is "aligned with the state court litigant." *D.L.*, 392 F.3d at 1230. The

critical inquiry is whether the federal plaintiff can pursue its claim in the state court proceedings,

14

either because it is a party to the state court litigation, or because it is in privity with a party in the state court proceeding. *Id.* (*Younger* applies "when in essence only one claim is at stake and the legally distinct party to the federal proceeding is merely an alter ego of a party in state court"); *see also French v. Mattheyer*, Case No. CIV-09-0015-F, 2010 WL 11606970, at \*5 (W.D. Okla. Jan. 27, 2010) (refusing to apply *Younger* where federal plaintiff's claims did not "derive from" and were legally distinct from state court plaintiff's claims). Because the United States is not a party or in privity with a party to the state court cases, this Court cannot surrender its jurisdiction over this case pursuant to *Younger* abstention.

Defendant argues that the United States' not being an "actual party" to the state criminal proceedings "is immaterial . . . as the United States claims it is acting as a trustee on behalf of the tribes." ECF No. 52 at 13. This argument is confused on multiple fronts. First, the tribes are not parties in state court either—in each case, the only parties are Oklahoma (through Defendant) and the individual criminal defendant being prosecuted. Second, even if the tribes were parties in state court, the United States and tribes have claims and interests unique to each sovereign, precluding any argument that the tribes stand in privity with the United States. *See* ECF No. 51 at 3-4. Third, Defendant can make no reasonable argument that an individual criminal defendant is in privity with the United States. *See Ute Indian Tribe*, 790 F.3d at 1008 ("privity" conveys "the existence of a relationship sufficient to give courts confidence that the party in the former litigation was an effective representative of the current party's interests"). The United States has its own distinct claims both as a prosecuting sovereign in Indian country and as trustee for federally recognized tribes. An individual criminal defendant is in no position to make arguments on behalf of the United States and instead must rely on arguments based solely on their private

15

rights. The United States, asserting rights as a sovereign and as trustee for federally recognized tribes, is not "merely an alter ego" of an individual litigant.

Defendant's *Younger* arguments are baffling when taken at face value. The United States is a prosecuting sovereign in Indian country with an undeniable interest in protecting its own criminal jurisdiction and the jurisdiction of federally recognized tribes. *See supra* Argument I.A. Yet Defendant would relegate the United States to the sidelines while its rights and interests are litigated by other parties in various state courts. Defendant does not identify *which* state criminal proceeding this Court should defer to, and the logical end to Defendant's argument is to prevent the United States from ever bringing its own claims. Defendant would limit the United States to amicus participation in state court until a party eventually decides to appeal to the Supreme Court—only so the United States can continue to participate as amicus there if the Supreme Court agrees to take the case. *Younger* does not require a federal plaintiff to wait while others litigate its rights and obligations to the Supreme Court. *See Wolf,* 275 F.3d at 1268 (courts cannot abstain "based merely on the presence of parallel state and federal suits"); *Benavidez v. Eu*, 34 F.3d 825, 832 (9th Cir. 1994) (finding no case "in which any court has ever granted *Younger* abstention because a state proceeding was ongoing in which the federal party was, not a party, but an amicus"). Although Defendant may prefer to litigate in state court against individual criminal defendants instead of the United States, Defendant's preference does not require this Court to surrender jurisdiction under *Younger*.

###### B. There Are No State Interests Implicated That Warrant *Younger* Abstention.

Defendant's *Younger* arguments suffer another fatal flaw: allocation of criminal jurisdiction in Indian country is an issue of federal law and policy. *E.g., Ute Indian Tribe v. Lawrence,* 875 F.3d 539, 540, 544 (10th Cir. 2017). In deciding whether *Younger* abstention is

warranted, the Court must determine whether "the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006).

Defendant argues that criminal prosecutions are a traditional area of state concern and thus involve important state interests. ECF No. 52 at 16-17. While that is generally true, the Tenth Circuit has conclusively held that where "states seek to enforce state law against Indians in Indian country '[t]he presumption and the reality . . . are that federal law, federal policy, and federal authority are paramount' and the state's interests are insufficient 'to warrant *Younger* abstention.'" *Ute Indian Tribe*, 790 F.3d at 1008-09 (quoting *Seneca-Cayuga Tribe of Okla.*, 874 F.2d at 713-14) (rejecting *Younger* abstention and remanding with instruction to enter a preliminary injunction where the state was prosecuting Indians in Indian country). "Where, as in this case, a state court is asked to decide issues of federal law in an area in which federal interests predominate, the State's interests in the litigation is . . . not important enough to warrant *Younger* abstention." *Seneca-Cayuga Tribe of Okla.*, 874 F.2d at 714 (rejecting *Younger* abstention and affirming preliminary injunction against Oklahoma and state trial court judge where Oklahoma sought to enjoin tribal gaming in state court); *see also Winnebago Tribe v. Stoval*, 341 F.3d 1202, 1204-05 (10th Cir. 2003) (rejecting *Younger* abstention where State of Kansas was prosecuting tribal officials and attempting to assess fuel taxes on corporation wholly owned by Indian tribe); *Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535, 541 (9th Cir. 1995) (rejecting *Younger* abstention where State of California was prosecuting tribal gaming officials in state court because California had "no legitimate interest in intruding on the federal government's exclusive jurisdiction to prosecute"); *Fort Belknap Indian Cmty. v. Mazurek*, 43 F.3d 428, 432 (9th Cir. 1994) (rejecting *Younger* abstention where State of Montana was prosecuting Indians in state

17

court for violations of state liquor laws because "the jurisdictional question is paramount and federal"). Defendant entirely ignores this body of federal case law that conclusively precludes application of *Younger* abstention here.

That the states have no interest in enforcing state law against Indians in Indian country makes perfect constitutional sense. Although a state generally has an "important interest in its criminal proceedings," *Buck v. Myers*, 244 F. App'x 193, 197 (10th Cir. 2007), the U.S. Constitution assigns Congress "plenary and exclusive" responsibility over Indian affairs, including the regulation of relationships with Indian tribes and people. *See Haaland v. Brackeen*, 599 U.S. 255, 272-73 (2023) (collecting cases). This includes subjects such as criminal law that in other contexts would be within the purview of the states. *Id.*; *see also* ECF No. 5 at 16-20 (discussing historic federal statutes dealing with criminal jurisdiction in Indian country). Because allocation of criminal jurisdiction over Indians in Indian country is governed by Congress's exclusive and plenary authority over Indian affairs, Oklahoma has "no legitimate interest in intruding on the federal government's exclusive jurisdiction to prosecute." *Sycuan Band of Mission Indians*, 54 F.3d at 541 (citing *Seneca-Cayuga Tribe*, 874 F.2d at 714); *see also Stoval*, 341 F.3d at 1204-05; *cf. Harper v. PSC*, 396 F.3d 348, 356 (4th Cir. 2005) (rejecting *Younger* abstention where "the Framers consciously withdrew interstate commerce from the vast collection of interests that remain the primary responsibility of the states"). In sum, the Tenth Circuit has already rejected Defendant's argument that the state has important interests here, foreclosing *Younger* abstention.

      **C.**    **Even If The Threshold Requirements For *Younger* Abstention Were Met, An Exception To *Younger* Applies.**

Even assuming that the requirements for *Younger* abstention were met, which they are not, an exception to the *Younger* doctrine applies where, as here, the state prosecution was "(1)

18

commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such extraordinary circumstance creating a threat of 'irreparable injury' both great and immediate." *Winn v. Cook*, 945 F.3d 1253, 1258-59 (10th Cir. 2019) (quoting *Phelps v. Hamilton*, 59 F.3d 1058, 1063–64 (10th Cir. 1995)). For the third exception (irreparable injury) to apply, the state prosecution must pose a "threat to the plaintiff's federally protected rights . . . that cannot be eliminated by his defense against a single criminal prosecution." *Id.* at 1259 (quoting *Younger v. Harris*, 401 U.S. 37, 46 (1971)).

Although the third exception assumes that the federal plaintiff is the state court defendant, because that is required for *Younger* abstention in the first place, the logic of the exception applies here. The United States is not a party to any of the many state court prosecutions already commenced by Defendant, and the United States is not guaranteed notice as Defendant commences and litigates more cases. Because the United States is and will continue to be injured by state criminal proceedings to which it is not a party, this is an extraordinary circumstance creating a threat of irreparable injury to the United States that cannot be eliminated by defense in a single criminal prosecution. *See supra* Argument I.A; ECF No. 8 at 22-25 (discussing irreparable harm caused by Defendant).

### D.    The Anti-Injunction Act Does Not Support *Younger* Abstention.

Finally, the Anti-Injunction Act, 28 U.S.C. § 2283 (the "AIA"), cannot save Defendant's faulty arguments for *Younger* abstention. *See* ECF No. 52 at 11, 17-19. The AIA provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The AIA, though, "is not a jurisdictional statute; '[i]t merely limits [the district courts'] general equity powers in respect to the granting of a particular form of equitable relief.'" *Sac & Fox Nation v. Hansen*, 47 F.3d 1061, 1063 (10th

Cir. 1995) (quoting *Smith v. Apple*, 264 U.S. 274, 279 (1924)). That is, the AIA "prevents [district courts] from granting relief by way of injunction in the cases included within its inhibitions," but that statute does not divest a district court of jurisdiction or otherwise mandate abstention to a state court proceeding. *Apple*, 264 U.S. at 279; *see also, e.g.*, *Molina v. Aurora Loan Serv., LLC*, 635 F. App'x 618, 623 (11th Cir. 2015) (citing cases). The AIA therefore does not require or support abstention here.[5]

### III.     THERE IS NO BASIS FOR *COLORADO RIVER* ABSTENTION

As with *Younger* abstention, Defendant's arguments for *Colorado River* abstention also fail. *Colorado River* abstention cannot apply here because Defendant has not identified a "parallel" state court proceeding, nor any state criminal proceeding that will adequately resolve the issues presented by the parties in this case.

#### A.     Defendant Cannot Meet The Threshold Requirement of Identifying A Parallel State Court Case.

"[D]eclining to exercise jurisdiction based on the *Colorado River* doctrine is appropriate only in 'exceptional' circumstances." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (quoting *Colorado River*, 424 U.S. at 818). The Supreme Court has provided four factors to determine whether dismissal under *Colorado River* is warranted: "(1) whether the state or federal court first assumed jurisdiction over the same res; (2) 'the inconvenience of the federal forum'; (3) 'the desirability of avoiding piecemeal litigation'; and (4) 'the order in which jurisdiction was obtained by the concurrent forums.'" *D.A. Osguthorpe*, 705 F.3d at 1234 (quoting *Colorado*

---

[5] Although not necessary to decide now, the AIA also does not limit this Court's power to grant the equitable relief requested by the United States. *E.g.*, *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 225-26 (1957) (the AIA does not apply where the United States is the party seeking the injunction); *N.L.R.B. v. Nash-Finch Co.*, 404 U.S. 138, 146 (1971) ("The purpose of § 2283 was to avoid unseemly conflict between the state and the federal courts where the litigants were private persons, not to hamstring the Federal Government and its agencies in the use of federal courts to protect federal rights.").

*River*, 424 U.S. at 818). "Only the clearest of justifications will warrant dismissal," *Colorado River*, 424 U.S. at 819, and "any doubt should be resolved in favor of exercising federal jurisdiction," *Fox*, 16 F.3d at 1082 (balancing of factors must be "heavily weighted in favor of jurisdiction").

"Before examining [the *Colorado River*] factors, however, a federal court must first determine whether the state and federal proceedings are parallel." *Fox,* 16 F.3d at 1081; *see also United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002) (parallel proceeding is a "threshold" requirement). "Suits are parallel if substantially the *same parties* litigate substantially the *same issues* in different forums." *Fox,* 16 F.3d at 1081 (emphasis added) (citation omitted). It would be a "serious abuse of discretion" for the federal court to surrender its jurisdiction absent a parallel state court proceeding that "will be an adequate vehicle for the complete and prompt resolution of the issue *between the parties*." *Fox*, 16 F.3d at 1081 (emphasis added) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Const. Co*., 460 U.S. 1, 27 (1983)); *see also Phoenix Energy Mktg., Inc. v. Chase Oil Corp*., No. 16–CV–0681–CVE–TLW, 2017 WL 2347188, at * 9 (N.D. Okla. May 30, 2017) (Eagan, J.) (refusing to relinquish jurisdiction based on *Colorado River* since parties in state and federal cases were not the same).

Defendant has not identified a "parallel" state court proceeding for two reasons. First, there is no state court case in which the United States is a party or in privity with a party. *See supra* Argument II.A. Defendant alleges that his criminal prosecutions in state court involve parties that are "substantially the same in this and the State criminal proceedings." ECF No. 52 at 21. That is manifestly untrue. The United States is not and cannot be a party to any of those criminal proceedings. Although Defendant alleges that the United States' amicus participation in *Williams*, CF-2023-311, is sufficient to make it a parallel state court proceeding, ECF No. 52 at

21

21, Defendant cites no case law supporting that argument. Second, Defendant has not established that the United States is seeking to litigate substantially the same issues as the parties in the state prosecutions. Here, the United States seeks to protect its own prosecutorial authority, granted by Congress, as well as tribal sovereignty. The individual criminal defendants in state court, on the other hand, appear only to assert arguments supporting their own private rights. The issues to be litigated as between the state and federal cases are therefore not substantially the same.

This Court must also evaluate "the adequacy of the state court action *to protect the federal plaintiff's rights.*" *Fox*, 16 F.3d at 1082 (emphasis added) (citation omitted). "[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case . . . ." *See Fox*, 16 F.3d at 1081-82. Because this case is not parallel with any state court proceeding, the United States' rights will not be protected in state court, and this Court will not be left with "nothing further to do." As with the *Younger* analysis above, *see supra* Argument II.A, Defendant cannot seriously argue that an individual criminal defendant will be able to protect the United States' rights. Moreover, because the United States is not a party or in privity with a party in state court, the United States will not be bound by the state court judgements. *See Requena v. Roberts*, 893 F.3d 1195, 1209 n.7 (10th Cir. 2018) (issue preclusion applies where "the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication"); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (claim preclusion requires "identity of parties or privies in the two suits"). This Court will not be bound by a state court judgment either. *E.g.*, *Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir.

2016).[6] Thus, even if a state court were to rule in Defendant's favor, it would not provide a resolution of the dispute between the United States and Defendant, and this Court will still have a case and controversy to resolve after the state criminal proceedings conclude.

**B.    The Presence of Federal Questions Weighs Heavily Against *Colorado River* Abstention**

"[T]he presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26. Decades of federal case law hold that Defendant does not have criminal jurisdiction over Indians in Indian country because federal and tribal jurisdiction is exclusive; Defendant fails to cite a single federal court case saying otherwise. Indeed, Defendant does not once acknowledge that federal law provides the rules of decision for this case. Whether the states possess criminal jurisdiction over Indians in Indian country is undoubtedly a question of "federal law in an area in which federal interests predominate." *Seneca-Cayuga Tribe*, 874 F.2d at 714; *see supra* Argument II.B. And there is a "considerable and uniform body of authority" holding that states lack criminal jurisdiction over Indians for crimes committed in Indian country. *Ute Indian Tribe*, 790 F.3d at 1003, 1006 ("unless Congress provides an exception to the rule" that states lack criminal jurisdiction over Indians in Indian country, "states possess 'no authority' to prosecute Indians for offenses in

---

[6] Because judgment in a state criminal proceeding is not binding here, Defendant's reliance on OCCA's recent ruling in *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684 (Dec. 5, 2024), is misplaced. It is further misplaced because OCCA's interpretation of federal law is simply incorrect—the *Bracker* balancing test cannot be applied to determine whether the State has concurrent jurisdiction over Indians in Indian country. *See* ECF No. 5. Moreover, even if OCCA were correct that the *Bracker* balancing test should be applied, OCCA's balancing of federal, tribal, and state interests in *O'Brien* was limited to the factual circumstance before it: the City of Tulsa's prosecution of non-member Indians for misdemeanor traffic crimes. ECF No. 2 at ¶¶ 31-35; *see also Stitt v. City of Tulsa*, 2025 OK CR 5, 2025 WL 719122 (Mar. 6, 2025). Those are not the circumstances here. Accordingly, if this Court determines that the *Bracker* balancing test should be applied, the competing interests in the criminal prosecutions commenced by Defendant will have to be balanced for the first time.

Indian country"); *see also DeCoteau v. Dist. Cnty. Court*, 420 U.S. 425, 427 & n.2 (1975); *Ute Indian Tribe v. Lawrence*, 22 F.4th 892, 900 (10th Cir. 2022); *Cheyenne–Arapaho Tribes v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980). Defendant's argument that *Castro-Huerta sub silentio* overturned decades of case law holding that states lack criminal jurisdiction over Indians in Indian country will also be resolved pursuant to federal law. *See Hudson v. Harpe*, No. 23-6181, 2024 WL 262695, at *1 (10th Cir. 2024) ("*Castro-Huerta* does not apply" to case involving an Indian criminal defendant). This source-of-law consideration therefore weighs heavily against *Colorado River* abstention.

### C.   Defendant's Remaining *Colorado River* Arguments Fail.

Because Defendant cannot satisfy *Colorado River*'s threshold requirement of identifying a parallel state court proceeding, the Court need not consider if "exceptional circumstances" exist to warrant abstention. *See Colorado River*, 424 U.S. at 813. That aside, Defendant has not shown that any such exceptional circumstances exist.

First, Defendant makes a perfunctory argument that the federal forum is "inconvenient," therefore warranting abstention. ECF No. 52 at 21. Defendant specifically argues that the federal forum is inconvenient because any appeal of this case will go to the Tenth Circuit, located in Colorado, while any appeal of the state criminal cases would go to OCCA. Defendant cites no case law saying a federal district court should consider the convenience of the federal and state appellate court locations in conducting its abstention analysis. Further, this Court is located merely one county over from any of the three counties within Defendant's prosecutorial district, hardly posing any great geographic hurdle. *See D.A. Osguthorpe*, 705 F.3d at 1234. Defendant further argues that, because this federal proceeding "requires substantial briefing and expenditure of additional taxpayer dollars," it should be dismissed. ECF No. 52 at 21. But the inconvenience of having to litigate a matter at all is no reason for a federal court to abstain. Such an outcome

would swallow the rule that a federal court may not surrender its jurisdiction due to the mere presence of a state court case deciding similar issues. *Colorado River*, 424 U.S. at 817 (generally "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction"); *Fox,* 16 F.3d at 1082 (same).

Defendant's second argument proves challenging to take seriously. Defendant argues that this federal case has created "quintessential piecemeal litigation, which is the paramount *Colorado River* consideration." ECF No. 52 at 22. Defendant fails to acknowledge that piecemeal litigation existed prior to this federal case. The question of federal law at issue here has been presented in cases brought by Defendant himself in various state trial courts. *E.g.*, *Williams*, No. CF-2023-311; *Ashley*, No. CF-2024-421; *Bull,* CF-2023-226; *Oklahoma v. Billey*, Nos. CF-2024-00073 (Dist. Ct. Craig Cnty.), *Oklahoma v. Billey,* CF-2024-00117 (Dist. Ct. Craig Cnty.). In fact, a motivating reason for the United States to bring this case was the sheer impossibility of tracking all unlawful prosecutions of Indians in Indian country in Oklahoma. The United States therefore seeks, as it has a right to, a case that binds Defendant and provides certainty over the allocation of criminal jurisdiction in Indian country. Defendant's preferred solution, on the other hand, is to have these issues litigated piecemeal in various state court cases, where the United States and tribes are not and cannot be parties. In seeking abstention, Defendant seeks to foreclose the only case that could resolve these criminal jurisdiction issues by binding the United States, Defendant, and the relevant tribes.

## CONCLUSION

For all these reasons, Defendant's Motion to Dismiss should be denied, and Defendant should be ordered to respond to the United States' Motion for Preliminary Injunction.

DATED: March 28, 2025                    Respectfully submitted,


                                         ADAM R.F. GUSTAFSON
                                         Acting Assistant Attorney General


                                         /s/ Cody McBride
                                         CODY MCBRIDE
                                         HILLARY HOFFMAN
                                         United States Department of Justice
                                         Environment & Natural Resources Division
                                         Tribal Resources Section
                                         P.O. Box 7611, Ben Franklin Station
                                         Washington, D.C. 20044
                                         Tel.: (202) 514-6755 (McBride)
                                         Tel.: (202) 598-3147 (Hoffman)
                                         Fax: (202) 353-1156
                                         cody.mcbride@usdoj.gov
                                         hillary.hoffman@usdoj.gov


OF COUNSEL:
CONOR CLEARY, Field Solicitor, Tulsa Field Solicitor's Office
United States Department of the Interior
Office of the Solicitor


                                         *Attorneys for United States of America*

26

## CERTIFICATE OF SERVICE

I certify that on March 28, 2025, I electronically filed this document with the Clerk of the Court by using the CM/ECF system, which will serve and send a notice of electronic filing to all parties or their counsel of record.

*/s/ Cody McBride*
CODY MCBRIDE