UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 24-CV-0626-CVE-SH |
| ) | (BASE FILE) |
| and ) | |
| ) | Consolidated with: |
| MUSCOGEE (CREEK) NATION, ) | Case No. 25-CV-0050-CVE-SH |
| ) | |
| Consolidated Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MATTHEW J. BALLARD, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court are the Cherokee, Chickasaw, and Choctwaw Nations ("the Nations") motion to intervene as plaintiffs (Dkt. # 24), defendant's response (Dkt. # 50), plaintiff United States of America's response (Dkt. # 51), and the Nations' reply (Dkt. # 65). The Court finds that the Nations have standing and permits the Nations to intervene under FED. R. CIV. P. 24(b)(1)(B).

**I.**

Defendant Matthew Ballard is the District Attorney for the Twelfth Prosecutorial District of Oklahoma and, thus, is responsible for appearing in state court to prosecute all violations of state law within his district. Dkt. # 24-2, at 3 (citing OKLA. STAT. tit. 19, § 215.4). The twelfth district includes Craig, Mayes, and Rogers counties, which are entirely or partially located within the boundaries of the Cherokee reservation. Id. In 2023 and 2024, defendant brought criminal charges against Navajo Nation member Brayden Bull (Oklahoma v. Bull, CF-2023-226 (Okla. Dist. Ct. Rogers Cnty.)), Chickasaw Nation member Tony Williams (Oklahoma v. Williams, CF-2023-311

(Okla. Dist. Ct. Rogers Cnty.)) and Choctaw Nation member Eric Ashley (Oklahoma v. Ashley, CF-2024-421 (Okla. Dist. Ct. Rogers Cnty.)) for conduct that allegedly occurred on the Cherokee reservation. Id. at 31-33; Dkt. # 50, at 5-6. In Williams and Ashley, the state district courts granted Williams and Ashley's motions for continuance in light of the case before this Court. See Williams, CF-2023-311; Ashley, CF-2024-421.[1]

On December 23, 2024, the United States filed a complaint in this district seeking declaratory and injunctive relief against defendant in his official capacity to prevent him from further asserting that Oklahoma has criminal jurisdiction over Indians for conduct occurring in Indian country, and from unlawfully detaining and prosecuting Indians in Indian country. Dkt. # 2, at 1. While the United States sues on its own behalf in its sovereign governmental capacity, the United States also references its special relationship with Indian tribes and its interest in the exercise of tribal criminal authority in Indian country in its complaint. Id. at 2-3.

On January 22, 2025, the Nations filed a motion to intervene as plaintiffs (Dkt. # 24-1), which included a complaint (Dkt. # 24-2) and a motion for preliminary injunction (Dkt. # 24-3). Dkt. # 24. The Nations seek declaratory and injunctive relief to prevent defendant from wrongfully continuing to assert that Oklahoma has criminal jurisdiction over Indians in Indian country, and from unlawfully detaining and prosecuting Indians based on that claimed authority. Dkt. # 24-2, at 1.

---

[1] The Court may take judicial notice of the state proceedings. Zimomra v. Alamo Rent-A-Car, Inc., 111 F.3d 1495, 1503 (10th Cir. 1997) ("Federal Rule of Evidence 201 authorizes a federal court to take judicial notice of adjudicative facts at any stage of the proceedings, and in the absence of a request of a party."); St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

On January 29, 2025, the Muscogee (Creek) Nation filed a separate complaint in this district seeking declaratory and injunctive relief against defendant's practice of asserting criminal jurisdiction over Indians within the Muscogee (Creek) Nation's reservation boundaries, and filed a motion to consolidate its case with the United States' case. Muscogee (Creek) Nation v. Ballard, 25-CV-0050-CVE-JFJ, Dkt. ## 2, 5 (N.D. Okla.). On March 27, 2025, the Court granted the Muscogee (Creek) Nation's motion to consolidate cases, finding that the United States and Muscogee (Creek) Nation's cases arose out of the same conduct—defendant's alleged prosecution of Indians for conduct occurring in Indian country—and shared common issues of law—Oklahoma's criminal jurisdiction of Indians for conduct occurring in Indian country. Dkt. # 66, at 3.

## II.

The Nations argue that they have standing and seek leave to intervene as of right or with the Court's permission. Dkt. # 24-1, at 10. The United States agrees that the Court should allow the Nations to intervene as of right or with the Court's permission.[2] Dkt. # 51, at 1. Conversely, defendant responds that the Nations lack standing, and fail to meet the standard for intervention as of right or with the Court's permission. Dkt. # 50, at 2.

**A. Standing**

Article III of the United States Constitution limits federal courts to the adjudication of cases or controversies. U.S. CONST. art. III, § 2, cl. 1. "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004). "Article III standing requires a litigant to show: (1) an injury in fact that is (a) concrete and

---

[2] The United States does not address the issue of standing. Dkt. # 51.

particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision." Kane Cnty. v. United States (Kane III), 928 F.3d 877, 888 (10th Cir. 2019). The standing requirement ensures that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982). The primary focus for any analysis of standing under Article III "is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury." Morgan v. McCotter, 365 F.3d 882, 888 (10th Cir. 2004). Further, while "[t]he plaintiff must show that a favorable judgment will relieve a discrete injury, [] it need not relieve his or her every injury." Nova Health Sys. v. Gandy, 416 F.3d 1149, 1158 (10th Cir. 2005). The party invoking the jurisdiction of a federal court has the burden to establish Article III standing. New England Health Care Emps. Pension Fund v. Woodruff, 512 F.3d 1283, 1288 (10th Cir. 2008).

The Court finds that the Nations have standing to intervene as plaintiffs seeking injunctive and declaratory relief.[3] As to injury in fact, defendant argues that the Nations have not suffered an injury in fact because their alleged injury is abstract, and defendant's prosecutions of Indians for conduct occurring in Indian country do not harm the Nations because they are not a party to the

---

[3] The Court has an independent obligation to consider standing. PeTA, People for the Ethical Treatment of Animals v. Rasmussen, 298 F.3d 1198, 1202 (10th Cir. 2002) (explaining that "standing is a jurisdictional issue, and [courts] are obligated to raise the issue sua sponte to ensure that there is an Article III case or controversy"). Because the Court finds that the Nations have independent standing to intervene, the Court need not address whether the United States has standing or whether the Nations have piggyback standing.

defendant's conduct infringes on their sovereignty. See Williams v. Lee, 358 U.S. 217, 223 (1959) ("There can be no doubt that to allow the exercise of state jurisdiction here[, where the complained of transaction occurred on the reservation,] would undermine the authority of the tribal courts over [r]eservation affairs and hence would infringe on the right of the Indians to govern themselves."); Ute VI, 790 F.3d at 1005 (explaining that "the prosecution of [a tribal member is] itself an infringement on tribal sovereignty").

As to traceability and redressability, defendant argues that the Nations' injuries are not redressable or traceable because state prosecutions and adjudications would continue even if the Court enjoined defendant. Dkt. # 50, at 10-11. The Nations' injuries are fairly traceable to defendant's challenged conduct because these injuries arise directly from defendant's alleged prosecution of Indians for conduct occurring in Indian country. Therefore, regardless of defendant's predictions as to future prosecutions or adjudications, a favorable judicial decision enjoining defendant from continuing to criminally prosecute Indians for conduct occurring in Indian country would redress the Nations' injury at least "'to some extent,' which is all the law requires."[5] See Consumer Data Indus. Ass'n v. King, 678 F.3d 898, 903, 904 (10th Cir. 2012) (finding that "it seems

---

[5] The parties argue as to whether Bronson v. Swensen, 500 F.3d 1099 (10th Cir. 2007), supports the Nations' argument that they have standing. Dkt. # 24-1, at 15; Dkt. # 50, at 11. In Bronson, the plaintiffs challenged Utah's criminal prohibition of polygamy and sought relief against the county clerk, who refused to issue a marriage license to the plaintiffs, because the plaintiffs feared prosecution under the criminal statute. Bronson, 500 F.3d at 1103, 1107. The Tenth Circuit found that the plaintiffs lacked standing in part because "[t]he redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute." Id. at 1111. The Court does not rely on Bronson in holding that the Nations show that the requested relief would redress their injury. Nevertheless, the Court finds that the current case is distinguishable from Bronson because the Nations allege that defendant exercised, and may continue to exercise, his "power" to bring actions against Indians for conduct occurring in Indian country. Dkt. # 24-1, at 14.

uncontroversial that restraining the Attorney General from enforcing the allegedly preempted provisions of the [state statute] would go a long way toward providing relief for [plaintiff]" and that Nova Health Sys., 416 F.3d 1149 (10th Cir. 2005), is limited to its facts) (quoting Massachusetts v. EPA, 549 U.S. 497, 526 (2007)); Nova Health Sys., 416 F.3d at 1160 (finding that the plaintiff failed to show a fairly traceable or redressable injury where the defendants had "no actual or imminent claims against" the plaintiff under the challenged statute). Further, as a favorable decision as to injunctive relief would redress the Nations' injuries, "the same must be true of declaratory relief." Consumer Data Indus. Ass'n, 678 F.3d at 906. Therefore, the Court finds that the Nations have standing to intervene as plaintiffs.

**B. Intervention**

A party may intervene as of right under FED. R. CIV. P. 24(a)(2) or with the Court's permission under FED. R. CIV. P. 24(b)(1)(B). A party seeking to intervene as of right must show that "(1) the application is 'timely[;'] (2) 'the applicant claims an interest relating to the property or transaction which is the subject of the action[;'] (3) the applicant's interest 'may as a practical matter' be 'impaired or impeded[;'] and (4) 'the applicant's interest is not adequately represented by existing parties.'" United States v. Albert Inv. Co., 585 F.3d 1386, 1391 (10th Cir. 2009) (quoting Utah Ass'n of Cntys. v. Clinton, 255 F.3d 1246, 1249 (10th Cir. 2001)).[6]

---

[6] As to intervention as of right, the Court finds that the Nations fulfill the first three elements. As discussed below, the Nations timely filed their motion. Further, applying the Court's reasoning as to the Nations' standing, the Court finds that the Nations claim protectable interests—their inherit sovereignty—relating to the subject of the action—defendant's prosecution of Indians for conduct occurring in Indian country, and an adverse decision in the litigation allowing defendant to continue the challenged conduct may impair the Nations' interests. However, as to the fourth element, the Court is cognizant of the tension within the Tenth Circuit as to which test courts should use to determine the adequacy of representation by an existing governmental party. See Kane Cnty. v. United States (Kane V), 113 F.4th

Under Rule 24(b), however, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). Permissive intervention is "a matter within the sound discretion of the district court . . . ." Arney v. Finney, 967 F.2d 418, 421 (10th Cir. 1992) (quotations omitted). "In exercising its discretion, the [C]ourt must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). While the Court may consider the adequacy of representation by an existing party when assessing permissive

---

1290, 1292-94 (10th Cir. 2024) (per curiam) (Tymkovich, Kelly, Eid, Carson, & Federico, JJ., dissenting) (arguing that the test articulated in Kane III, 928 F.3d 877, and expanded upon in Kane Cnty. v. United States (Kane IV), 94 F.4th 1017 (10th Cir. 2024), is incorrect and favoring the test articulated in Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regul. Comm'n, 787 F.3d 1068 (10th Cir. 2015)). In Tri-State Generation & Transmission Association, the Tenth Circuit stated that, "where a governmental agency is seeking to represent both the interests of the general public and the interests of a private party seeking intervention, [courts] have repeatedly found representation inadequate for purposes of Rule 24(a)(2). . . . These cases, however, are inapplicable where the objective of the applicant for intervention is identical to that of one of the parties. . . . Under such circumstances, [courts] presume representation is adequate. . . . Thus, even though a party seeking intervention may have different ultimate motivations from the governmental agency, where its objectives are the same, [courts] presume representation is adequate." Tri-State Generation & Transmission Ass'n, 787 F.3d at 1072-73 (internal citations and quotations omitted) (Kelly, Phillips, & Moritz, JJ.). More recently, the Tenth Circuit in Kane III stated that "[w]hen a would-be intervenor's and the representative party's interests are identical, [courts] presume adequate representation. But where the purportedly adequate representative of the proposed intervenor's interest is a governmental entity, this presumption can be rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest." Kane III, 928 F.3d at 887 n. 13, 892 (internal citations and quotations omitted) (Phillips & Ebel, JJ.) (Tymkovich, J., dissenting). Therefore, the Court declines to opine as to whether the United States adequately represents the Nations and proceeds to its analysis of permissive intervention. See Arizona v. California, 460 U.S. 605, 614-15 (1983) (declining to consider whether the United States adequately represented Indian tribes where "it [was] obvious that the Indian Tribes, at a minimum, satisf[ied] the standards for permissive intervention set forth in the Federal Rules").

intervention, the Court is not required to do so. Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regul. Comm'n, 787 F.3d 1068, 1075 (10th Cir. 2015).

The Court will first consider whether the Nations timely filed their motion. The Court considers the "timeliness of a motion to intervene . . . 'in light of all of the circumstances[,]'" including "'(1) the length of time since the movant knew of its interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movant.'" Oklahoma ex rel. Edmondson v. Tyson Foods, Inc., 619 F.3d 1223, 1232 (10th Cir. 2010) (alterations in the original omitted) (quoting Sanguine, Ltd. v. U.S. Dep't of Interior, 736 F.2d 1416, 1418 (10th Cir.1984)). The Nations argue that they timely filed their motion because: they filed it less than one month after the United States filed its complaint; the Court has not issued a scheduling order setting a trial or motion cut-off date; and the Court denying the Nations' motion to intervene would prejudice them as they could not participate directly in litigating the scope of tribal sovereignty and the allocation of criminal jurisdiction in Indian country. Dkt. # 24-1, at 16-17. The United States and defendant do not argue that the Nations' motion is untimely, and the Court finds that the Nations timely filed their motion.

The Court will now consider whether the Nations meet the other requirements for permissive intervention. The Nations argue that their claims share at least some aspect with the United States' claims that the defendant's prosecution of Indians for alleged offenses in Indian country interferes with federal authority, violates inherent tribal sovereignty, and violates the Cherokee Nation's treaty rights. Dkt. # 24-1, at 23. Further, the Nations argue that their intervention would not unduly delay or prejudice the adjudication of the parties' rights because the Nations seek to intervene at an early stage and raise the same primary issues as the United States. Id. at 24. The United States agrees that the Court should permit the Nations to intervene because the Nations do not seek to raise new issues,

have a specialized interest and unique knowledge about the case, and seek to intervene at an early stage. Dkt. # 51, at 2, 4-5. However, defendant responds that intervention would likely result in further inundation and duplication of briefing, and that the Court will reach the same outcome regardless of the Nations' participation as intervenors. Dkt. # 50, at 16.

"[T]he Indians' participation in litigation critical to their welfare should not be discouraged." Arizona v. California, 460 U.S. 605, 608, 614, 615 (1983) (permitting Indian nations to intervene in an action in which the United States had already intervened because: the nations' motion was timely; nations did not seek to "bring new claims or issues against the states . . . [;]" the litigation had determined and would continue to determine the nations' interests; and the states "failed to present any persuasive reason why their interests would be prejudiced . . ." or that the nations' presence unduly delayed the litigation). Here, the Nations timely filed a motion to intervene as plaintiffs to protect their sovereignty, an issue at the heart of this case. The United States and the Nations' claims arise out of the same conduct—defendant's alleged prosecution of Indians for conduct occurring in Indian country—and share common issues of law—Oklahoma's criminal jurisdiction of Indians for conduct occurring in Indian country. Dkt. # 2, at 1; Dkt. # 24-2, at 1. Therefore, the Nations raise claims that share with the main action a common question of law or fact. Additionally, the Court finds that allowing the Nations to intervene at this early stage would not prejudice plaintiff or delay the litigation. Thus, the Court finds that "it is obvious that the [Nations], at a minimum, satisfy the standards for permissive intervention set forth in the Federal Rules[,]" and permissive intervention shall be granted. See Arizona, 460 U.S. at 614-15.

**IT IS THEREFORE ORDERED** that the Nations' motion to intervene as plaintiffs (Dkt. # 24) is **granted**.

**IT IS FURTHER ORDERED** that all pleadings **shall be filed in the base file only, under the following amended caption:**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-CV-0626-CVE-SH |
| | ) | (<u>BASE</u> <u>FILE</u>) |
| and | ) | |
| | ) | Consolidated with: |
| CHEROKEE NATION, | ) | Case No. 25-CV-0050-CVE-SH |
| CHICKASAW NATION, and | ) | |
| CHOCTAW NATION, | ) | |
| | ) | |
| Intervenor Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MUSCOGEE (CREEK) NATION, | ) | |
| | ) | |
| Consolidated Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MATTHEW J. BALLARD, | ) | |
| | ) | |
| Defendant. | ) | |

**IT IS FURTHER ORDERED** that the Clerk of Court shall amend the case caption accordingly.

**DATED** this 9th day of April, 2025.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE