**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-CV-0626-CVE-SH |
| | ) | (<u>BASE</u> <u>FILE</u>) |
| and | ) | |
| | ) | Consolidated with: |
| CHEROKEE NATION, | ) | Case No. 25-CV-0050-CVE-SH |
| CHICKASAW NATION, and | ) | |
| CHOCTAW NATION OF OKLAHOMA, | ) | |
| | ) | |
| Intervenor Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MUSCOGEE (CREEK) NATION, | ) | |
| | ) | |
| Consolidated Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW J. BALLARD, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS INTERVENOR COMPLAINT**
**<u>AND BRIEF IN SUPPORT</u>**

**TABLE OF CONTENTS**

I. BACKGROUND ........................................................................................................ 1

    A. *The Oklahoma Court of Criminal Appeals decision in O'Brien v. City of Tulsa and Stitt v. City of Tulsa* ...................................................................................... 2

    B. *The ongoing criminal proceedings Plaintiff and the Nations seek to have enjoined* 4

    C. *McGirt* and *Castro-Huerta* ....................................................................... 6

    D. *Parallel Litigation in this Court* .................................................................. 7

II. THE ANTI-INJUNCTION ACT AND *YOUNGER* ABSTENTION ............................ 7

    A. *There are ongoing state criminal proceedings* ......................................... 10

    B. *The State court provides an adequate forum to hear the claims raised in the Complaint* ................................................................................................. 12

    C. *The state proceedings involve important state interests* .......................... 16

    D. *No exceptions to the bar on federal injunctions of state criminal proceedings apply* ......................................................................................................... 17

    E. *Plaintiff's and the Nations' generalized request to enjoin potential future criminal proceedings is governed by the same Younger abstention considerations* ........... 18

III. *COLORADO RIVER* ABSTENTION ...................................................................... 19

CONCLUSION ........................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*,
    398 U.S. 281 (1970) ............................................................................................ 8

*City of Tulsa v. O'Brien*,
    2024 OK CR 31, 2024 WL 5001684 ............................................... 1, 2, 3, 4

*Colorado River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976) ................................................................................. passim

*Creek v. Kunzweiler, et al.*,
    No. 25-cv-75-GKF-JFJ (N.D. Okla. Feb. 14, 2025) ............................ 7, 17

*D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*,
    705 F.3d 1223 (10th Cir. 2013) ............................................................. 19

*D.L. v. Unified Sch. Dist. No. 497*,
    392 F.3d 1223 (10th Cir. 2004) ............................................................. 10

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975) ................................................................................. 18

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975) ................................................................................. 10

*Ellis v. Morzelewski*,
    2:21-CV-639-TC, 2022 WL 3645850 (D. Utah Aug. 24, 2022) ............... 19

*Fisher v. Whetsel*,
    142 Fed.Appx. 337 (10th Cir. 2005) ...................................................... 16

*Fox v. Maulding*,
    16 F.3d 1079 (10th Cir. 1994) .......................................................... 19, 20

*Glob. Impact Ministries v. Mecklenburg Cnty.*,
    2021 WL 982333 (W.D.N.C. Mar. 16, 2021) ..................................... 11, 12

*Graff v. Aberdeen Enterprizes, II, Inc.*,
    65 F.4th 500 (10th Cir. 2023) ................................................................. 9

*Herrera v. City of Palmdale*,
    918 F.3d 1037 (9th Cir. 2019) ................................................................. 19

*Hicks v. Miranda*,
    422 U.S. 332 (1975) .......................................................................... 10, 18

*J.B. ex rel. Hart v. Valdez,*
    186 F.3d 1280 (10th Cir. 1999) ................................................................ 9

*Joseph A. ex rel. Corrine Wolfe v. Ingram,*
    275 F.3d 1253 (10th Cir. 2002) .............................................................. 10

*Kansas v. Garcia,*
    589 U.S. 191 (2020) ................................................................................ 16

*Kelly v. Robinson,*
    479 U.S. 36 (1986) .................................................................................. 16

*McClanahan v. State Tax Comm'n of Arizona,*
    411 U.S. 164 (1973) .................................................................................. 3

*McGirt v. Oklahoma,*
    591 U.S. 894 (2020) ..................................................................... 2, 5, 6, 15

*Mitchum v. Foster,*
    407 U.S. 225 (1972) .............................................................................. 1, 17

*Moore v. Sims,*
    442 U.S. 415 (1979) ................................................................................ 13

*New Beckley Mining Corp. v. International Union, UMWA,*
    946 F.2d 1072 (4th Cir. 1991) ................................................................ 19

*Oklahoma v. Castro-Huerta,*
    597 U.S. 629 (2022) ........................................................................ passim

*Organized Village of Kake v. Egan,*
    369 U.S. 60 (1962) .................................................................................... 3

*Pennzoil Co. v. Texaco, Inc.,*
    481 U.S. 1 (1987) .................................................................................... 13

*Phelps v. Hamilton,*
    122 F.3d 885 (10th Cir. 1997) ................................................................ 17

*Pueblo of Pojoaque v. Biedscheid,*
    689 F. Supp. 3d 1033 (D.N.M. 2023), *appeal dismissed,* 2024 WL 4256791 (10th Cir. May 13,
    2024) ......................................................................................................... 8

*Smith v. Bayer Corp.,*
    564 U.S. 299 (2011) .................................................................................. 8

*Spargo v. N.Y. State Comm'n on Judicial Conduct,*
    351 F.3d 65 (2d Cir. 2003) .................................................................... 10

*Sprint Commc'ns, Inc. v. Jacobs,*
    571 U.S. 69 (2013) ................................................................................. 1, 9

*State v. Ashley,*
    CF-2024-421 (Dist. Ct. Rogers Co.) ................................................... 5, 6

*State v. Bull,*
    CF-2023-226 (Dist. Ct. Rogers Cnty.) .............................................. 4, 18

*State v. Crosson,*
    2023 OK CR 18, 540 P.3d 16 .................................................................. 5

*State v. Williams,*
    CF-2023-311 (Dist. Ct. Rogers Co.) ............................................. passim

*Stitt v. City of Tulsa,*
    2025 OK CR 5 ....................................................................................... 4, 5

*Tony Alamo Christian Ministries v. Selig,*
    664 F.3d 1245 (8th Cir. 2012) ............................................................11, 12

*Tooele Cnty. v. United States,*
    820 F.3d 1183 (10th Cir. 2016) ................................................................. 8

*Vendo Co. v. Lektro-Vend Corp.,*
    433 U.S. 623 (1977) ................................................................................... 7

*Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah,*
    240 F.3d 871 (10th Cir. 2001) ........................................................ 13, 17

*Weyerhaeuser Co. v. Wyatt,*
    505 F.3d 1104 (10th Cir. 2007) ................................................................. 8

*White Mountain Apache Tribe v. Bracker,*
    448 U.S. 136 (1980) ................................................................................... 3

*Winn v. Cook,*
    945 F.3d 1253 (10th Cir. 2019) ...................................................... passim

*Younger v. Harris,*
    401 U.S. 37 (1971) .......................................................................... passim

**Statutes**

21 O.S. § 1021 ................................................................................................. 5

21 O.S. § 1021.2 .............................................................................................. 5

21 O.S. § 1024.2 .............................................................................................. 5

21 O.S. § 843.5(C) ........................................................................................... 6

22 O.S. § 1051(A) ................................................................................................ 5

63 O.S. § 2-402 ................................................................................................... 6

63 O.S. § 2-405(B) .............................................................................................. 6

63 O.S. § 2-415(C) .............................................................................................. 5

74 O.S. § 6 .......................................................................................................... 5

28 U.S.C.A. § 2283 ............................................................................................. 8

**Other Authorities**

1906 Oklahoma Enabling Act ............................................................................. 3

Public Law 280 ................................................................................................... 3

There has long existed in our judicial system a "national policy forbidding federal courts to stay or enjoin pending state court proceedings[.]" *Mitchum v. Foster*, 407 U.S. 225, 230 (1972). Grounded in notions of federalism and comity, this policy demands that "[w]hen there is a parallel, pending state criminal proceeding, federal courts *must* refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (emphasis added). Such is the case here. Yet the intervenor tribes—the Cherokee Nation, the Chickasaw Nation, and the Choctaw Nation of Oklahoma (collectively, "Nations")—urge this Court to disregard, or perhaps reverse, this long-standing, established policy and enjoin ongoing state criminal proceedings (and prevent countless future ones) addressing the exact same issues raised by the United States and the Nations. More alarmingly, this request represents a collateral attack that would require a federal district court to reverse a recent decision of the Oklahoma Court of Criminal Appeals.

The Intervenor Complaint [Doc. 78] should be dismissed under the Anti-Injunction Act and the *Younger* abstention doctrine and/or the *Colorado River* abstention doctrine.

## I.      BACKGROUND

Displeased with the opinion of the Oklahoma Court of Criminal Appeals ("OCCA") in *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684 ("*O'Brien*"), issued just weeks before this lawsuit was filed, as well as rulings by various State court judges in ongoing criminal proceedings, and the Supreme Court's opinion in *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) ("*Castro-Huerta*"), the Nations intervened in this improper lawsuit filed by the United States ("Plaintiff"). Both Plaintiff and the Nations seek an injunction preventing Matthew J. Ballard, a state prosecutor ("Ballard" or "Defendant"), from asserting criminal jurisdiction over and prosecuting *all* Indians accused of committing *any* crime in Indian country [Doc. 78, at 36, Prayer for Relief ¶ 2]. However, the subject of the lawsuit is actually limited to nonmember Indians

accused of non-major crimes in Indian country. And while Plaintiff sued a district attorney, the injunction sought by Plaintiff and the Nations would directly affect the State's judiciary, which is responsible for determining whether State courts have subject matter jurisdiction. This includes the OCCA, which recently addressed the jurisdictional issue, and State district court judges who are currently applying the law as handed down by the OCCA and the U.S. Supreme Court.

Below is a summary of the OCCA's opinion, which addressed each of the arguments raised by Plaintiff and the Nations here, followed by relevant context regarding the ongoing criminal proceedings at issue. The introduction will then close with a reminder that neither *McGirt v. Oklahoma*, 591 U.S. 894 (2020) ("*McGirt*"), nor *Castro-Huerta* support the novel path Plaintiff and intervenors pursue here—a federal lawsuit.

A.   The Oklahoma Court of Criminal Appeals decision in *O'Brien v. City of Tulsa* and *Stitt v. City of Tulsa*

On December 5, 2024, the OCCA issued a detailed Opinion in *O'Brien* addressing the central issue in this lawsuit—whether the State has subject matter jurisdiction over nonmember Indians who commit non-major crimes in Indian country within Oklahoma. The OCCA's Opinion provided jurisdictional clarity following the United States Supreme Court's opinions in *McGirt* and *Castro-Huerta*. These decisions addressed, in part, the State's jurisdiction to prosecute major crimes committed by Indians in Indian country and the State's jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country, respectively.

The *O'Brien* case involved the prosecution of traffic violations committed by a nonmember Indian in Indian country. In *O'Brien*, the OCCA took the United States Supreme Court at its word, concluding that "[u]nless preempted by federal law, 'as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country.'" 2024 OK CR 31, ¶ 14 (quoting *Castro-Huerta*, 597 U.S. at 652-53) (citing *Organized Village of Kake v. Egan*, 369 U.S. 60, 72

(1962)). Applying the framework established in *Castro-Huerta* to crimes committed by Indians in Indian country, the OCCA stated:

> Under the Supreme Court's precedent, "a State's jurisdiction in Indian country may be preempted (i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government."

*Id*. ¶ 17 (quoting *Castro-Huerta*, 597 U.S. at 638).

The OCCA explicitly rejected each of the contentions Plaintiff and the Nations raise in their Complaints. The Court held that: (1) the Supreme Court's framework in *Castro-Huerta* applies to a state's criminal jurisdiction over Indians, *id*. ¶¶ 13-17; (2) neither Public Law 280 nor the 1906 Oklahoma Enabling Act preempts state jurisdiction over general crimes committed by Indians, *id*. ¶ 20; (3) application of *McClanahan* does not override *Bracker* balancing or any other component of the *Castro-Huerta* framework, *id*. ¶¶ 27-35; and (4) as here, the framework urged by O'Brien "disregard[ed] the plain holding of *Castro-Huerta* and instead rel[ies] largely on Justice Gorsuch's dissent and a string of citations to U.S. Supreme Court precedent that ultimately undermine its own argument," *id*. ¶ 5 (Musseman, J., concurring).[1] Accordingly, the OCCA found that the State has jurisdiction to prosecute these non-major crimes committed in Indian country. On February 5, 2025, the OCCA issued an order denying O'Brien's Petition for Rehearing. The case is now ripe for appeal to the United States Supreme Court.

---

[1] The OCCA references *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164 (1973) (holding that the Arizona state individual income tax was unlawful as applied to reservation Navajo Indians with respect to income derived wholly from reservation sources) and *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145 (1980) ("This inquiry is not dependent on mechanical or absolute conceptions of state or tribal sovereignty, but has called for a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.").

The OCCA has since issued a similar decision in *Stitt v. City of Tulsa*, 2025 OK CR 5 ("*Stitt*"). Reiterating its holding in *O'Brien*, the court "found that *Oklahoma has concurrent criminal jurisdiction in Indian country over non-member Indian defendants accused of committing non-major crimes*." *Id.* at ¶ 8, citing *O'Brien*, 2024 OK CR 31, ¶ 35 (emphasis added). In other words, the OCCA has issued another decision explicitly addressing the issue raised by Plaintiff and the Nations in this improper litigation. On April 7, 2025, the OCCA denied Stitt's Petition for Rehearing. Unlike *O'Brien*, an appeal stemming from the lower court's sustainment of a motion to dismiss for lack of jurisdiction, *Stitt* derived from a conviction following a non-jury trial. *Stitt*, 2025 OK CR 5, ¶ 1, 9. So, the *Stitt* decision will not be remanded and is immediately appealable to the United States Supreme Court.

     B.     *The ongoing criminal proceedings Plaintiff and the Nations seek to have enjoined*

As support for their Complaint, the Nations references three ongoing criminal prosecutions that Defendant filed in Rogers County District Court for conduct that occurred in the historical bounds of the Cherokee Nation (the "Ongoing Prosecutions").[2] [Doc. 78, Compl. ¶¶ 52-58]. In addition to the fact that each was pending at the time Plaintiff filed its Complaint (and prior to the Nations filing their Complaint as Intervenors), each has at least one common theme—allegations of non-major crimes committed by nonmember Indian defendants (*i.e.*, a member of a tribe charged with committing a crime within the boundaries of another tribe's Indian country). Relevant details of the Ongoing Prosecutions follow.

In *State v. Bull*, CF-2023-226 (Dist. Ct. Rogers Cnty.), Ballard filed criminal charges against Brayden Bull, a Navajo Nation member. The district court initially refused to issue a

---

[2] The Nations do not cite any conduct at issue in this litigation that occurred in Choctaw or Chickasaw Nation Indian country.

warrant after receiving a probable cause affidavit, but the OCCA issued a writ of mandamus instructing the lower court to do so. *State v. Crosson*, 2023 OK CR 18, 540 P.3d 16. Bull is accused of manufacturing child porn in violation of 21 O.S. § 1021.2, distribution of child porn in violation of 21 O.S. § 1021, and possession of child porn in violation of 21 O.S. § 1024.2. Ballard is joined by special prosecutor Greg Mashburn, whom Governor Stitt appointed pursuant to his authority under 74 O.S. § 6. Not even Bull has filed a challenge to the State's jurisdiction. Yet Plaintiff and the Nations seek to do so in this lawsuit.

In *State v. Williams*, CF-2023-311 (Dist. Ct. Rogers Co.), Ballard filed criminal charges against Tony Demond Williams, a member of the Chickasaw Nation. Williams is accused of aggravating trafficking in illegal drugs (fentanyl) in violation of 63 O.S. § 2-415(C). Williams has challenged State jurisdiction based on *McGirt*. Within two months prior to the commencement of this action, the Cherokee Nation, Chickasaw Nation, and the U.S. Department of Justice's Environment and Natural Resources Division filed amicus submissions in *Williams*, advancing the arguments raised here. The issue of whether the State court has jurisdiction has been extensively briefed and is pending a decision from Rogers County District Judge Stephen Pazzo. Judge Pazzo's decision will be appealable to the OCCA, and any ruling there may be appealable to the United States Supreme Court. *See* 22 O.S. § 1051(A); Sup. Ct. R. 11.[3]

In *State v. Ashley*, CF-2024-421 (Dist. Ct. Rogers Co.), Ballard filed criminal charges against Eric Ashley, a member of the Choctaw Nation. Ashley was accused of child neglect in

---

[3] Over the State's objection, the matter has been continued to June 20, 2025. Notably, the docket reflects that the criminal defendant was present on February 21, 2025 with counsel for the Cherokee Nation. *State v. Williams*, Min. of 2-21-25, CF-2023-311 (Dist. Ct. Rogers Cnty. March 21, 2025).

violation of 21 O.S. § 843.5(C),[4] and remains accused of possession of controlled dangerous substance in violation of 63 O.S. § 2-402 and possession of drug paraphernalia in violation of 63 O.S. § 2-405(B). The case is currently pending. Ashley has challenged the State court's jurisdiction. *Ashley*, Supp. Mot. to Dismiss for Lack of Jurisdiction, CF-2024-421 (Dist. Ct. Rogers Co. Feb. 21, 2025).[5] If Plaintiff or the Nations wish to share in the challenge, they may file the same or a similar brief to those they submitted in *Williams*.

Unless disrupted by an improper federal injunction, each of these cases can trend on the same course as *McGirt* and *Castro-Huerta* did.

C.      *McGirt* and *Castro-Huerta*

Although Plaintiff's and the Nation's Complaints repeatedly reference *McGirt* and *Castro-Huerta*, they fail to acknowledge that both cases arose from State court proceedings. Like the criminal cases cited in Plaintiff's and the Nations' Complaints, McGirt and Castro-Huerta were prosecuted by an Oklahoma district attorney in a county courthouse, with appeals made to the OCCA—the same State appellate court where Bull, Williams, and Ashley can seek resolution of any jurisdictional issues or other grievances they may wish to raise. From there, the United States Supreme Court is available, just as it was in *McGirt* and *Castro-Huerta*. Neither of those cases resulted from federal lawsuits, declaratory judgments, or injunctions.

Despite this established pattern, like Plaintiff, the Nations now refuse to recognize its applicability to the Ongoing Prosecutions. This is especially puzzling given that the Cherokee and

---

[4] On February 27, 2025, Ballard amended the charges against Ashley. The State charge of child neglect has been dismissed because it is arguable that the State crime, even though not defined by the Major Crimes Act, is a major crime. All remaining charges in the Ongoing Prosecutions are non-major crimes. Notably, dismissal would be necessary under the standing and abstention analyses herein, regardless of whether the crimes at issue were only non-major crimes.

[5] On February 21, 2025, the court continued the matter at defense counsel's request. *State v. Ashley,* MIN OF 2-21-2025, CF-2024-421 (Dist. Ct. Rogers Co. March 21, 2025).

Chickasaw Nations submitted a jurisdictional brief as Amicus in one of the Ongoing Prosecutions supporting the individual defendant's motion to dismiss and raising the same arguments advanced here based on their "self-government interest." *See State v. Williams*, Amicus Brief of the Cherokee Nation and Chickasaw Nation in Support of Motion to Dismiss, CF-2023-311 (Dist. Ct. Rogers Cnty. Oct. 31, 2024).

> D.    *Parallel Litigation in this Court*

The Muskogee (Creek) Nation has filed a separate action in this court seeking to restrain another state court prosecutor raising precisely the same issues and arguments advanced by Plaintiff and the Nations in this matter. *See Creek v. Kunzweiler, et al.*, No. 25-cv-75-GKF-JFJ (N.D. Okla. Feb. 14, 2025). On April 23, 2025, the court in *Kunzweiler* entered an order denying the Muskogee (Creek) Nation's request for a temporary restraining order (Doc. 54, Opinion and Order). The court found that "the Nation[, which has advanced the same arguments as those presented here,] has not yet identified certain, great, actual, and non-theoretical harm[,]" (*e.g.*, the Nation does not contend defendants have denied its jursidcition to enforce its own lawas against nonmember Indians), and recognizing the State's own interest in protecting its residents, enforcing its laws, and upholding justice within its territorial boundaries, including "with respect to non-member Indians." *Id*. at 4.

As will be demonstrated, this case must be dismissed under the Anti-Injunction Act and *Younger* abstention doctrine derived from *Younger v. Harris*, 401 U.S. 37 (1971), or, alternatively, pursuant to *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976).

> II.    THE ANTI-INJUNCTION ACT AND *YOUNGER* ABSTENTION

The Anti-Injunction Act "is an absolute prohibition against any injunction of any state-court proceedings." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977). Its "core message

is one of respect for state courts." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011). It provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C.A. § 2283. The "exceptions are narrow and are not to be loosely construed." *Tooele Cnty. v. United States*, 820 F.3d 1183, 1188 (10th Cir. 2016). The law rests on the principle that "[p]roceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately" the United States Supreme Court. *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 287 (1970). As such, it "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts" and prohibits "frequent federal court intervention" in state court proceedings and "forestalls ... 'friction between the state and federal courts.'" *Weyerhaeuser Co. v. Wyatt*, 505 F.3d 1104, 1108 (10th Cir. 2007). The Anti-Injunction Act has been held to prevent Indian tribes from obtaining a federal court order enjoining an action pending in state court. *Pueblo of Pojoaque v. Biedscheid*, 689 F. Supp. 3d 1033, 1129 (D.N.M. 2023), *appeal dismissed*, 2024 WL 4256791 (10th Cir. May 13, 2024). In analyzing a plaintiff's claims under the Act, courts "should resolve doubts about the applicability of an exception in favor of allowing the state-court proceeding to continue." *Tooele Cnty.*, 820 F.3d at 1188 (*quoting Smith*, 564 U.S. at 306).

The Anti-Injunction Act reflects the "fundamental policy against federal interference with state criminal prosecutions[.]" *Younger*, 401 U.S. at 46. In *Younger*, the Supreme Court explained that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id*. at 45. The Court went on to hold that "[o]rdinarily, there should be no interference with such officers; primarily they are charged with the duty of

prosecuting offenders against the laws of the state, and must decide when and how this is to be done." *Id*. The Supreme Court has put it more bluntly, saying that "[w]hen there is a parallel, pending state criminal proceeding, federal courts *must* refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc.* 571 U.S. at 72 (emphasis added). The proper individuals to challenge a prosecutor's authority are the accused. *Younger*, 401 U.S. at 46. And the appropriate forums are the state courts where charges are pending and defenses may be lodged. *Id*. This principle is rooted in a notion referred to as "Our Federalism"—which emphasizes the "belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id*. at 44.

Under the *Younger* abstention doctrine, federal courts are required to abstain from exercising jurisdiction to interfere with state proceedings when the following three requirements are met:

> (1) [T]here is an ongoing state criminal, civil, or administrative proceeding,
>
> (2) [T]he state court provides an adequate forum to hear the claims raised in the federal complaint, and
>
> (3) [T]he state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019). Once those three criteria are satisfied, "*Younger* abstention is not discretionary." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999). "Thus, claims for declaratory relief and injunctive relief are subject to outright dismissal." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 523 (10th Cir. 2023).

Each element is easily met here. And even if this lawsuit targets only the authority of a single district attorney but not criminal proceedings as a whole, abstention is still required. *Younger* "governs whether the requested relief would interfere with the state court's ability to conduct

proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002).

A.      There are ongoing state criminal proceedings

Both Plaintiff and the Nations concede in their Complaints that there are ongoing state criminal proceedings. *See Winn*, 945 F.3d at 1258 (holding the first element is satisfied where the parties do not dispute the existence of an ongoing state criminal proceeding). As the basis for their Complaint, the Nations specifically cite the Ongoing Prosecutions. [Doc. 78, Compl. ¶¶ 52-58]. The fact that the Nations are not actual parties to the Ongoing Prosecutions is not controlling, as the Nations are not "genuine strangers" and, instead, hold interests that are closely aligned with their individual members. *See D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1230–31 (10th Cir. 2004) (holding that although a claim of a "genuine stranger" may proceed in federal court, "when in essence only one claim is at stake and the legally distinct party to the federal proceeding is merely an alter ego of a party in state court, *Younger* applies").

Federal courts routinely apply *Younger* abstention to non-parties when their interests are closely tied to those of individuals involved in ongoing state proceedings. As the Supreme Court stated in *Doran v. Salem Inn, Inc.*, *Younger* considerations may extend to "legally distinct parties" where their interests are "so closely related" that interference with one would disrupt the others. 422 U.S. 922, 928 (1975). Likewise, in *Hicks v. Miranda*, the Court confirmed that abstention is proper where interests are "intertwined" and where the federal action seeks to disrupt a state prosecution. 422 U.S. at 348–49. These comity principles apply even when the federal plaintiff is not a party to the state proceeding but asserts rights derived from those who are. *See D.L.*, 392 F.3d at 1231; *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 83–84 (2d Cir. 2003); *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 635–36 (6th Cir. 2005).

The analysis and decision in *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245 (8th Cir. 2012), are enlightening. There, the Arkansas Department of Human Services took custody of numerous children living on the property of a religious organization ("TACM") following findings of abuse. Although TACM itself was not a party to the state dependency and parental rights proceedings, it filed a federal lawsuit alleging violations of its and its members' constitutional rights. TACM argued that it had no way to participate in state court and no access to federal court if *Younger* applied—claiming it was in a "no man's land." *Id.* at 1251. The appellate court rejected that argument, emphasizing that *Younger* abstention applied because TACM's injuries were "sufficiently related to, or inextricably intertwined with," those of its members, who were parties to the state cases. *Id.* at 1253 (holding that relief based on the injuries of individual members were "plainly barred by Younger"). As to TACM's claims of independent injury, the court found those injuries were "generally aligned with those of its members" and, therefore, "in one degree or another, derivative of the injuries of its members." *Id.* Accordingly, the court held that *Younger* barred the federal action, even though TACM could not become a party to the state court proceedings and had asserted facial constitutional claims.

Similar to the present case, in *Glob. Impact Ministries v. Mecklenburg Cnty.*, 2021 WL 982333 (W.D.N.C. Mar. 16, 2021), several organizations filed an action against a city and county in North Carolina seeking, among other things, an injunction against the enforcement of a local ordinance banning certain protest gatherings as unconstitutional after several of its members had been cited and arrested pursuant to it. According to the court, these "ongoing state criminal proceedings relating to the arrests or citations of" members of the organization plainly implicated *Younger*. *Id.* at *3. The organizations "share a close relationship and alignment with the" individual members and the state court proceedings. *Id.* at *4. And those "proceedings implicate important

state interests and provide an adequate opportunity for the parties in the state proceeding to raise constitutional challenges." *Id*. at *3

Here, the Nations' position is analogous to those of the organizations in *TACM* and *Glob. Impact Ministries*. By their own admission, the Nations share a close relationship and alignment with the criminal defendants, who themselves are Indians (two are members of the intervenor Nations). The Nations claim that the Cherokee Nation has suffered its own injuries – framed as an impact on its ability to exercise its own prosecutorial authority over *all Indians* in Indian country [Doc. 78, Compl. ¶ 15] – but such injury (which is simply manufactured without any basis, as it has cited no instance of the State interfering with the Nation's ability to prosecute non-member Indians for conduct occurring in Indian country), even if it exists, would arise only from the ongoing prosecutions of individual Indian criminal defendants. This claim, in other words, relies entirely on the asserted rights and circumstances of those defendants. Without the ongoing state prosecutions, the Nations would have no basis for this action. Like those organizations, the Nations are not parties in state court, but their claims are so intertwined with those of the defendants that any relief here would directly interfere with the pending state proceedings. The pendency of the Ongoing Prosecutions establishes this first element and also proves the next.

B.    The State court provides an adequate forum to hear the claims raised in the Complaint

Regarding the second factor, "unless state law clearly bars the interposition of the federal statutory and constitutional claims," a plaintiff typically has "an adequate opportunity to raise federal claims in state court." *Winn*, 945 F.3d at 1258. The application of *Younger* abstention does not require that the Nations themselves be actual parties to the prosecutions but, rather, that the ongoing state judicial proceedings afford an adequate opportunity to hear the claims raised in the federal complaint. That is most certainly the case here.

State criminal proceedings fail to offer an adequate opportunity to raise federal issues "'only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it.'" *Moore v. Sims*, 442 U.S. 415, 433 (1979) (internal citations omitted). A federal plaintiff bears the burden to establish "that state procedural law bar[s] presentation of its claims." *Id.* at 432. This feat becomes nearly insurmountable in light of the Tenth Circuit's full confidence in state courts' ability to address federal issues given "the constitutional obligation of the state courts to uphold federal law[.]" *Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah*, 240 F.3d 871, 876 (10th Cir. 2001). *See also Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 12 (1987) (*Younger* abstention "'offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests'") (internal citation omitted). "*Younger* requires only the availability of an adequate state-court forum, not a favorable result in the state forum." *Winn*, 945 F.3d at 1258.

Oklahoma state courts are capable of fairly and fully adjudicating the issues that Plaintiff and the Nations raise in this lawsuit, as evidenced by the fact that the State courts: (1) have already addressed the issues; (2) continue to address the issues in ongoing criminal prosecutions; and (3) have proven to be adequate forums to resolve issues of the same or more substantial nature.

*First*, this lawsuit was filed only weeks after the OCCA issued its opinion in *O'Brien*. The *O'Brien* court analyzed and rejected each of the contentions raised by Plaintiff and the Nations. *See supra* pp. 2-3. In doing so, the OCCA held that the State has jurisdiction to prosecute nonmember Indians who commit non-major crimes in Indian country. The Nations' dismay with the OCCA's analysis and outcome does not legitimize this lawsuit. Indeed, the Tenth Circuit has

made clear that state courts must provide only an "adequate state-court forum, not a favorable result in the state forum." *Winn*, 945 F.3d at 1258.

*Second*, Plaintiff and the Nations themselves cite the Ongoing Prosecutions in which State courts are actively adjudicating the issues raised here. Moreover, two of the Nations have effectively conceded by their filing of an amicus brief in one of those Ongoing Prosecutions that those courts are adequate forums—the Cherokee Nation because the events occurred within Cherokee Indian country and the Choctaw Nation because the defendant is a member. The Rogers County District Court was advised by the United States that: "Given the United States' longstanding role with respect to the exercise of criminal jurisdiction in Indian country, the United States believes that a submission as *amicus curiae* addressing the question presented by Mr. Williams' Motion to Dismiss *would be of assistance to the Court in deciding the issue presented*." *State v. Williams*, United States' Motion for Leave to Participate as *Amicus Curiae*, No. CF-2023-311 (Rogers Co. Dist. Ct., Nov. 8, 2024) (emphasis added). The Cherokee and Chickasaw Nations also requested leave to file amicus briefs, arguing that: "The Nations seek leave to file an amicus brief in this case [because it involves adjudication of matters concerning tribal self-government and tribal citizens' rights], and because their unique knowledge of the laws applicable to them and the legal principles that govern jurisdiction [in] Indian country can provide insight into the legal issues before the Court." *State v. Williams*, Cherokee Nation's and Chickasaw Nation's Brief in Support of Motion for Leave to File Amicus Brief, No. CF-2023-311 (Rogers Co. Dist. Ct., Oct. 31, 2024). The United States and the Nations would not have filed these submissions representing to the State court an expectation that the court would decide the precise issue in this lawsuit, absent a sincere belief that the State court is capable of fairly and fully adjudicating the purported federal issues before it.

*Third*, State courts have proven to be more than adequate forums in which to resolve issues of this nature. For example, both *McGirt* and *Castro-Huerta*—cases to which the Nations repeatedly cite in their Complaint—stemmed from State criminal prosecutions and decisions issued by the OCCA. Although the United States and the Nations have expressed contentment with only the former outcome, Plaintiff implicitly conceded in a recent filing in this case that the process through which *Castro-Huerta* was decided allowed "all three prosecuting sovereigns within the State of Oklahoma—federal, state, and tribal—" a fair opportunity to participate. [Doc. 51, at 4 n.1]. Notably, in Castro-Huerta's State district court proceeding, only the Cherokee Nation filed a jurisdictional brief in support of dismissal. However, in *State v. Williams*, the Cherokee Nation, along with the Chickasaw Nation and the United States have filed amicus submissions. In other words, all three sovereigns are involved in the *Williams* case, which is more than could have been said at the district court stage in *Castro-Huerta*. And the same right that McGirt and Castro-Huerta had to seek review by the OCCA and the United States Supreme Court will be available to each of the criminal defendants in the Ongoing Prosecutions.

If that is not enough, the State judicial system is again proving to be an adequate forum in the very case that prompted this lawsuit. In *City of Tulsa v. O'Brien*, O'Brien has the right to file a petition for a writ of certiorari with the United States Supreme Court within ninety days of February 5, 2025. This is the date that the OCCA denied O'Brien's Petition for Rehearing. In its denial, the OCCA reasoned, "The decision handed down in this case adequately disposed of the issues raised relying upon appropriate authority and the record on appeal. All questions duly submitted, including the issues raised in Appellee's motion to dismiss the appeal, his response brief, and the Muscogee (Creek) Nation's amicus brief, were reviewed by the Court prior to rendering the decision in this case." *City of Tulsa v. O'Brien*, Order Denying Pet. for Rehearing,

15

S-2023-715 (Okla. Ct. Crim. App. Feb. 5, 2025). In other words, either the OCCA's words are hollow or the OCCA already fairly and fully adjudicated the issue of whether the State maintains criminal jurisdiction over non-member Indians who commit non-major crimes in Indian country.

No guesswork is needed to determine whether the State courts provide adequate forums to adjudicate the issues raised in the Nations' Complaint. The State courts have done so and are doing so now. Plaintiff and the Nations have conceded as much.

> C.    *The state proceedings involve important state interests*

The third element of *Younger* abstention is satisfied both as a matter of law and fact. As a general matter, State criminal proceedings "are viewed as 'a traditional area of state concern'" and thus involve important state interests. *Winn*, 945 F.3d at 1258. More specifically, "Oklahoma's important interest in enforcing its criminal laws through proceedings in its state courts remains axiomatic." *Fisher v. Whetsel*, 142 Fed.Appx. 337, 339 (10th Cir. 2005).  Indeed, "[f]rom the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 589 U.S. 191, 211 (2020). The Supreme Court "has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court. . . ." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986).

As a sovereign entity, the State has a duty to protect its residents, enforce its laws, and uphold justice within its territorial boundaries. The Supreme Court recognized this in *Castro-Huerta*: "[T]he State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims." *Id.* at 651. "The State also has a strong interest in ensuring that criminal offenders—especially violent offenders—are appropriately punished and do not harm others in the State." *Id.* The Court in *Castro-Huerta* made no distinction

between Indian and nonmember Indian offenders. The State's interests are obvious when, as here, the State criminal proceedings involve egregious crimes, such as child pornography and fentanyl possession in the presence of a child. *See also Kunzweiler, et al.*, No. 25-CV-75-GKF-JFJ (N.D. Okla. April 23, 2025) (Doc. 54, Opinion and Order) (finding the State has an "interest[] in enforcing laws with respect to non-member Indians[]").

The Ongoing Prosecutions involve important State interests under any objective analysis.

     D.     *No exceptions to the bar on federal injunctions of state criminal proceedings apply*

Injunctive intervention in state criminal proceedings is permissible only if (1) irreparable injury was "both great and immediate," (2) the state law is "flagrantly and patently violative of express constitutional prohibitions, or (3) plaintiff could show "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." *Mitchum v. Foster*, 407 U.S. 225, 230-31 (1972) (internal citations omitted).   Regarding the third factor, the plaintiff bears a "heavy burden" to establish bad faith or harassment, and the Tenth Circuit looks to three factors:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.

*Weitzel*, 240 F.3d at 877; *see also Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) ("[I]t is the plaintiff's 'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment.").

*First*, the Nations have not pled any great and immediate irreparable injury—or any injury at all. Nor could they. Defendant's prosecution of the criminal defendants has not impacted the Nations' authority to prosecute the same criminal occurrences; thus, no injury. And the Ongoing

Prosecutions had been pending since as early as a year and a half prior to the filing of this lawsuit; thus, no imminency. *See State v. Bull*, CF-2023-226 (Rogers Co. Dist. Ct. June 29, 2023).

*Second*, the Nations also have not alleged that the Ongoing Prosecutions are motivated by a suspect class or in retaliation for an exercise of constitutional rights. Of course, the Nations could not sincerely contend that the prosecution of unconscionable conduct—manufacturing of child pornography and possession of fentanyl in the presence of a child—is motivated by anything other than concern for public safety.

*Third*, the Nations likewise have not attempted to show the existence of bad faith, harassment, or any other unusual circumstance warranting equitable relief. Any such effort would be futile. The OCCA's recent decision in *O'Brien*—the decision that seemingly sparked this litigation—the Supreme Court's decision in *Castro-Huerta*, and state district court rulings in the criminal proceedings endorse the State's prosecutorial jurisdiction; thus, no frivolity or abuse of prosecutorial discretion.

In sum, even if the Nations tried (they have not), they could not fit their allegations into an exception to the non-discretionary bar on federal court intervention in state criminal proceedings. *Younger* abstention requires dismissal.

>   E.    *Plaintiff's and the Nations' generalized request to enjoin potential future criminal proceedings is governed by the same Younger abstention considerations*

Although *Younger* abstention is mandatory only where there is an "ongoing criminal prosecution," there "plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975); *see also Hicks v. Miranda*, 422 U.S. 332, 348–49 (1975) (holding that Younger abstention could not be avoided on the ground that no

criminal prosecution was pending against appellees on the date the federal complaint was filed where appellees "had a substantial stake in the state proceedings").

> Where a federal plaintiff has "a substantial stake in the state proceedings" or has interests that are "intertwined" with the interests of a party to the state proceedings, abstention—sometimes referred to as derivative abstention—may be appropriate.

*Ellis v. Morzelewski*, 2:21-CV-639-TC, 2022 WL 3645850, at *7 (D. Utah Aug. 24, 2022); *see also Herrera v. City of Palmdale*, 918 F.3d 1037, 1046-47 (9th Cir. 2019) (holding that parties with "a sufficiently close relationship or sufficiently intertwined interests" may be "treated similarly for purposes of *Younger* abstention.") (collecting cases).

To the extent the Court considers any such generalized claims as to potential future prosecutions that have not yet been filed, this is a situation where the Nations' interests are so intertwined that derivative abstention is appropriate. *Younger* abstention governs all prosecutions subject to the Nations' Complaint, not simply the Ongoing Prosecutions.

### III.    *COLORADO RIVER* ABSTENTION

Dismissal is also appropriate under the *Colorado River* abstention doctrine. The *Colorado River* doctrine provides that "reasons of wise judicial administration" at times warrant "dismissal of a federal suit due to the presence of a concurrent state proceeding." *D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting *Colorado River* 424 U.S. at 818). Declining jurisdiction based on the *Colorado River* doctrine is appropriate in exceptional circumstances. *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). To determine whether such circumstances exist, courts must first determine whether the state and federal proceedings are parallel. *Id*.    "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* (*quoting New Beckley Mining Corp. v. International Union*, UMWA, 946 F.2d 1072, 1073 (4th Cir. 1991).

It is indisputable that the issues in Plaintiff's and the Nations' Complaints have been and are being litigated in State court forums. The Nations cites three such examples—the Ongoing Prosecutions. In one of those cases, the criminal defendant recently filed a twenty-three-page brief in which he exhaustively advanced each argument Plaintiff and the Nations include in their Complaints. *State v. Williams*, Reply in Support of Motion to Dismiss for Lack of Jurisdiction, CF-2023-311 (Dist. Ct. Rogers Cnty. Feb. 14, 2025). There are clearly parallel state and federal proceedings.

The parties are also substantially the same in this and the State criminal proceedings. *See* Sec. II.B. Indeed, along with the United States, both the Cherokee and Chickasaw Nations filed amicus briefs in *State v. Williams*, approximately a month and a half prior to the filing of this lawsuit. *State v. Williams*, CF-2023-311 (Dist. Ct. Rogers Cnty. Oct. 31, 2024 and Nov. 8, 2024). And obviously, the parties in the Ongoing Prosecutions are necessarily the same here and in the State matters.

Because the state and federal proceedings are parallel, the court must next determine "whether deference to state court proceedings is appropriate under the particular circumstances." *Fox*, 16 F.3d at 1082. To make that determination, courts may consider these factors: "(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction." *Id*. a (citing *Colorado River*, 424 U.S. at 818). Defendant will address each in turn.

This case does not involve property, so the first factor does not apply. Next, the federal forum is inconvenient for at least two reasons. First, appeals from this litigation will be addressed by the Tenth Circuit, in Colorado, whereas appeals from the State court proceedings will be and have been addressed by the OCCA, in Oklahoma. The travel and expense associated with the

20

former is an unnecessary burden. Second, this federal proceeding requires substantial briefing and expenditure of additional taxpayer dollars only to have this Court address the exact issues being addressed—even already addressed—by State courts.

Moreover, this is quintessential piecemeal litigation, which is the paramount *Colorado River* consideration. *Colorado River*, 424 U.S. at 819. The Nations concede as much through reliance on the Ongoing Prosecutions, which have been on file since as early as June 2023. Again, the contentions central to the Complaints are squarely before the State court in at least *State v. Williams*, with Plaintiff's and the Nations' involvement. And the issues have already been addressed by OCCA and are ripe for appeal to the United States Supreme Court in *O'Brien*. Moreover, any argument that litigation in federal court offers uniformity has been foreclosed, because a parallel matter is pending before a distinct federal judge. *Muscogee (Creek) Nation v. Kunzweiler, et al.*, No. 25-CV-75-GKF-JFJ (N.D. Okla.). Should this case survive dismissal, the only wrinkle will be whether the matter should have been dismissed for the reasons set forth herein.

Last, the State courts obtained jurisdiction in the cases cited by Plaintiff and the Nations as early as June 2023. This case was not filed until December 23, 2024—weeks after the OCCA issued its opinion in *O'Brien*. Each applicable *Colorado River* factor weighs in favor of dismissal.

## CONCLUSION

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger*, 401 U.S. at 43. In this case, the United States and the Nations have attempted to throw that history out and turn established principles of federalism and comity on their head. The Ongoing Prosecutions are properly brought in State court, and they should be allowed to proceed without federal court interference. The arguments raised by Plaintiff and the Nations have been

raised in these and other similar state court criminal prosecutions as our nation's court system wisely provides. Nothing is preventing individual defendants from raising these arguments in those proceedings, or Plaintiff or the Nations from submitting amicus briefs where appropriate. This improper collateral attack on Oklahoma's judicial system cannot be permitted to stand.

Accordingly, Defendant respectfully requests the dismissal of the Intervenor Complaint under the Anti-Injunction Act, *Younger* abstention, and/or *Colorado River* abstention.

Date: April 29, 2025

Respectfully submitted,

*s/Phillip G. Whaley*
Phillip G. Whaley, OBA #13371
Grant M. Lucky, OBA #17398
Patrick R. Pearce, Jr., OBA #18802
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK  73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com
rpearce@ryanwhaley.com

Trevor S. Pemberton, OBA #22271
PEMBERTON LAW GROUP PLLC
600 North Robinson Avenue, Suite 323
Oklahoma City, OK 73102
P: (405) 501-5054
trevor@pembertonlawgroup.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

*s/Phillip G. Whaley*
Phillip G. Whaley